RICHARD A. BERJIAN, D. O., INC., ET AL., APPELLEES, *v.*
OHIO BELL TELEPHONE COMPANY, APPELLANT.

(No. 77-724—Decided May 3, 1978.)

*Messrs. Black, McCuskey, Souers & Arbaugh* and *Mr. Daniel M. Jonas,* for appellees.

*Mr. John S. Searles* and *Mr. Charles S. Rawlings,* for appellant.

SWEENEY, J. Before this court can reach the major issue in this cause concerning the enforceability of the limitation-of-liability clause contained in Ohio Bell's directory-advertising agreement, the court must first determine several preliminary issues concerning the directory-advertising agreement itself.

The first preliminary issue revolves around whether the directory-advertising agreement constituted the contract made between the parties. As opposed to the directory advertising agreement, appellees urge before this court in their initial proposition of law that Doctor Berjian may have entered into a "basic agreement" with Ohio Bell concerning the yellow-pages listing.

It is unclear from appellees' argument what constituted the "basic agreement" in this cause.

Specifically, no mention was made of a possible oral contract between the parties at the time the doctor's office manager placed the order for a yellow-pages listing with an employee of Ohio Bell. The issues whether such employee, as an agent of the telephone company, had the authority to enter into a contract, and whether such agent had the authority to enter into a contract not containing the customary terms and conditions for contracts involving yellow-pages advertising on behalf of the principal, were completely unexplored.

However, uncontroverted testimony of a manager for Ohio Bell demonstrates that the sales agents' major duty is to "negotiate with customers for items of advertising * * *." Upon review of the discussion had between the parties by telephone in this cause and absent evidence of the authority of the employee as an agent to bind the principal with respect to contracts entered into by the agent with the customer (see *Maslo Mfg. Co.* v. *Proctor Electric Co.* [1954], 376 Pa. 553, 103 A. 2d 743), the court concludes that the employee in this cause merely had the authority to solicit business for the principal and not to enter into binding obligations with customers on behalf of the telephone company. 1 Restatement of Agency 2d 152,

Section 50, Comment *b*. Therefore, the formal offer in this cause occurred at the time Ohio Bell sent a copy of the directory-advertising agreement to the doctor's office manager. The "basic agreement" which appellees allude to in their argument can only refer to the directory-advertising agreement.

The second preliminary issue revolves around whether the directory-advertising agreement is enforceable, since the agreement was never signed by the customer. Appellees contend that the agreement requires the signature of the customer as a condition precedent to the enforceability of its provisions.[1]

Although it is well-established that courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be bound by the terms of an agreement until formalized in a written document and signed by both (see *Smith* v. *Onyx Oil and Chemical Co.* [C. A. 3, 1955], 218 F. 2d 104, 108; 1 Williston on Contracts [Rev. Ed. 1936], 59, Section 28), in the cause *sub judice* there is no evidence of such intent.

The language contained in the agreement and cited by appellees in their brief to this court merely provides

---

[1]Appellees point out the following items contained in the directory-advertising agreement in support of their position: At the bottom of the agreement are spaces provided for the signatures of both the customer and the agent of the telephone company; immediately above those spaces is the printed clause, "[t]he undersigned Advertiser hereby requests the Telephone Company and the Telephone Company hereby agrees to insert the above items of advertising in the named directories subject to the terms and conditions on the reverse side hereof, which terms and conditions are made a part of this agreement"; on the reverse side of the agreement is the provision that "[t]he undersigned warrants that he is the Advertiser or that he is authorized by the Advertiser to sign this Agreement for and on behalf of the Advertiser"; and also on the reverse side is the clause: "By executing this Agreement, the Advertiser admits having read all of the foregoing and neither the Telephone Company nor the Advertiser shall be bound by any agreement or understanding not expressed herein or in any amendment to the Agreement * * *."

that the parties are in agreement with respect to the terms and conditions contained on the reverse side of the written document, that the person who signs on behalf of the advertiser has authority to do so, and that neither party is bound by any agreement or understanding unless expressly set forth in the written document. Signature spaces in the form contract do not in and of themselves require that the signatures of the parties are a condition precedent to the agreement's enforceability.

Moreover, previous dealings between the parties reflect that the telephone conversations between the doctor's office manager and various employees of Ohio Bell only concerned the proper placement of an order for advertising; there were no discussions concerning the terms and conditions upon which the service would be provided at that time. We, therefore, conclude that the directory-advertising agreement did not require the signature of the customer to be effective.

The third preliminary issue confronting this court is whether the provisions of the directory-advertising agreement are enforceable since Dr. Berjian did not formally express his acceptance by signing the agreement. However, simply because the customer did not signify his acceptance by executing the agreement does not necessarily result in its unenforceability. See *Bates* v. *Southgate* (1941), 308 Mass. 170, 31 N. E. 2d 551; *Executive Leasing Assoc., Inc.,* v. *Rowland* (1976), 30 N. C. App. 590, 227 S. E. 2d 642; 1 Corbin on Contracts 112, Section 31.

Although in the usual situation an offeror cannot cause the silence of the offeree to constitute an acceptance, where the relation between the parties justifies the offeror's expectation of a reply, such silence may constitute an acceptance on the part of the offeree. See 1 Williston on Contracts (3 Ed. 1957), 319, Section 91; Restatement of Contracts 2d 142, Section 72 (1)(c), (Tent. Draft Nos. 1-7, 1973).

In the cause at bar, the evidence reflects that Ohio Bell, pursuant to the office manager's placement of an or-

der for advertising in the yellow pages, sent a copy of the directory-advertising agreement to the doctor's office. Accompanying the order was a card calling to the customer's attention the terms and conditions of the agreement, and requesting notification of any changes or corrections to be made. Without further instructions from the customer, Ohio Bell proceeded to act on the order placed by the office manager.

At trial, the doctor's office manager admitted that she read both the card and the terms and conditions contained on the reverse side of the directory-advertising agreement, and that her subsequent contact with the telephone company was only for the purpose of requesting that the abbreviation "Inc." be added to the doctor's name in the yellow-pages listing.

It is clear that Ohio Bell was justified in believing that the offeree had accepted the terms and conditions of the written agreement. Not only did the doctor not notify Ohio Bell of any proposed changes, through his silence he demonstrated a willingness to accept the service at the stated rates, as evidenced by his payment of the monthly charge. As set forth in Corbin on Contracts, *supra,* at page 321:

"Frequently, services are rendered under circumstances such that the party benefited thereby knows the terms on which they are being offered. If he receives the benefit of the services in silence, when he had a reasonable opportunity to express his rejection of the offer, he is assenting to the terms proposed and thus accepts the offer."

Having found that the terms and conditions contained in the directory-advertising agreement constituted the contractual agreement between the parties, this court is confronted with the major issue of whether the limitation-of-liability clause is valid and enforceable or void as against public policy.

This court long ago adopted the well-established rule that a public utility, such as a common carrier or telegraph company, can not through use of a limitation-of-

liability clause except itself from liability for damages resulting from its own negligence. *N. W. Graham & Co.* v. *W. H. Davis & Co.* (1854), 4 Ohio St. 362, 377; *Telegraph Co.* v. *Griswold* (1881), 37 Ohio St. 301, at 310-311; *Baltimore & Ohio Rd. Co.* v. *Hubbard* (1905), 72 Ohio St. 302, 316; *Pennsylvania Co.* v. *Shearer* (1906), 75 Ohio St. 249, 251; *Western Union Telegraph Co.* v. *Edminston* (1924), 110 Ohio St. 139. The reason for the rule is that in the situation where the public utility is granted a monopoly in providing a specific service, it should not be able through its superior bargaining position to dictate unfair or oppressive terms and conditions with customers who have no choice but to accept the conditions along with the service. See *Sante Fe, Prescott & Phoenix Ry. Co.* v. *Grant Bros. Const. Co.* (1913), 228 U. S. 177, 184; *Gas House, Inc.,* v. *Southern Bell Telephone and Telegraph Co.* (1976), 289 N. C. 175, 183-184, 221 S. E. 2d 499.

However, courts have recognized that where the public utility has no legal or public duty to provide a specific service to its customers, the utility through use of an exculpatory clause may limit its liability for damages caused by its own negligence. See *Ciofalo* v. *Vic Tanney Gyms, Inc.* (1961), 10 N. Y. 2d 294, 177 N. E. 2d 925; *Gibbs* v. *Carolina Power & Light Co.* (1965), 265 N. C. 459, 144 S. E. 2d 393; 17 Corpus Juris Secundum 1160, Contracts, Section 262. In this situation, the customer is viewed as having several alternative choices in satisfying his specific needs, while the utility, absent a specific statutory duty to provide a necessary service, is viewed as one of many suppliers available to the customer. See *Greenwich Ins. Co.* v. *L. & N. R. R. Co.* (1902), 112 Ky. 598, 66 S. W. 411; *Sante Fe, supra,* at page 185.

In the overwhelming majority of jurisdictions confronting the issue of whether the classified advertising service is a service within the scope of the duties owed by the telephone company to the public, courts have found such service to be a matter of private concern only, and, therefore, have held that telephone companies through use

of exculpatory clauses in their service contracts can limit their liability for negligently failing to place a customer's order for advertising in the yellow pages. *McTighe* v. *New England Telephone and Telegraph Co.* (C. A. 2, 1954), 216 F. 2d 26; *Georges* v. *Pacific Telephone and Telegraph Co.* (D. C. Ore. 1960), 184 F. Supp. 571; *Robinson Ins. & Real Estate Inc.*, v. *Southwestern Bell Telephone Co.* (D. C. W. D. Ark. 1973), 366 F. Supp. 307; *State, ex rel. Mountain States Telephone and Telegraph Co.*, v. *District Court* (1972), 160 Mont. 443, 503 P. 2d 526; *Gas House, Inc., supra* (289 N. C. 175); *Wille* v. *Southwestern Bell Telephone Co.* (1976), 219 Kan. 755, 549 P. 2d 903; *University Hills Beauty Academy, Inc.*, v. *Mountain States Telephone & Telegraph Co.* (Colo. App. 1976), 554 P. 2d 723. As stated in the leading case on this subject, *McTighe, supra*, at page 28, "[i]f there be some disparity in the bargaining power of the contracting parties it is no more than may be found generally to exist * * *."

In Ohio, the General Assembly has assigned the Public Utilities Commission the responsibility of determining the type of service to be furnished customers by the telephone companies, as evidenced by R. C. 4905.231, which provides:

"The public utilities commission may make such investigations as it deems necessary and ascertain and prescribe reasonable standards of telephone service. Such standards shall be minimum requirements for the furnishing of adequate telephone service."

Pursuant to this authority, the commission adopted Rule 4901:1-5-07, which states that telephone companies are required to provide alphabetical listings of their customers in a directory. No requirement is made that the companies in addition provide an advertising listing service for their customers. Therefore, in Ohio as well, the service of providing advertising is a matter of private endeavor only.

Because classified advertising is not required as a service to be provided by the telephone company, it fol-

lows that the clause *sub judice* does not come within the general proscription prohibiting the use of limitation-of-liability clauses by public utilities, and thus, absent a specific showing of a violation against public policy, should be upheld under the traditional principles of freedom of contract. See *Dixon* v. *Van Sweringen Co.* (1929), 121 Ohio St. 56, 63; *Lamont Building Co.* v. *Court* (1946), 147 Ohio St. 183, 185.

The Court of Appeals herein, citing *Allen* v. *Michigan Bell Telephone Co., supra* (18 Mich. App. 632), in support of its holding that the limitation-of-liability clause was void, found that the telephone company enjoyed the benefits of a monopoly in providing its advertising service, and that customers dealing with this monopoly were unable to bargain over unfavorable terms contained in their service contracts.

This court notes at the outset that the telephone company, in providing classified advertising, is not providing a service which is statutorily required. Rather, on its own initiative, the company has chosen to provide the additional service. Furthermore, the classified directory is not the sole means of advertising available to customers of the telephone company.

Thus, with respect to the classified directory service, this court finds that the telephone company is not in a position comparable to that of a public utility required to provide a specific and necessary service to the public.

In support of their proposition that the limitation-of-liability clause *sub judice* is void as against public policy, great stress is placed by appellees on the fact that customers are unable to bargain over unfavorable terms.

However, this contention overlooks the fact that public utilities traditionally have been required to serve the public on an equal basis. See Restatement of Contracts 2d, *supra,* at page 540, Section 237, Comment *e.* Furthermore, it overlooks the fact that not all standardized agreements are necessarily in conflict with the public interest. See Restatement of Contracts 2d, *supra,* at pages 538-539,

Section 237, Comments *a* and *b;* Kessler, Contracts of Adhesion—Some Thoughts about Freedom of Contract, 43 Colum. L. Rev. 629, 631-632 (1943). The beneficial results of reducing costs which can be achieved through use of standardized agreements were admitted indirectly by the Michigan appellate court in *Allen, supra* (18 Mich. App. 632), when it stated at page 640:

" * * * There being no competing directory or means of communicating with the same audience of potential customers except possibly at prohibitive (and by comparison totally disproportionate) cost, doing without in this case was not a realistic alternative."

It would serve no clear public purpose to in effect make telephone companies insurers for the consequential damages sustained by their customers by holding that the companies cannot limit their liability to the cost of services provided in situations where they negligently omit or improperly list a customer's order in the classified directory. See *University Hills Beauty Academy, supra* (554 P. 2d 723), at page 726. Burdened with unpredictable and indeterminable future liabilities, telephone companies more than likely would be disinclined to provide the convenient service at all, or would provide the service at a prohibitive cost. As noted in *Mountain States Telephone and Telegraph Co., supra* (160 Mont. 443), at page 450, once an error or omission is made in a classified listing, the telephone company has no opportunity to correct the error until the next publication of the alphabetical listing, thus depriving the company of the opportunity of mitigating the damages caused to its customers.

Concluding that the limitation-of-liability clause in this cause is valid and enforceable,[2] the court is confront-

---

[2]It should be noted that the Kansas Supreme Court, applying by analogy the modern standard of "unconscionability" as that term is used in its individual state's version of the Uniform Commercial Code, has reached the same conclusion with respect to the validity of the limitation-of-liability clause as held by this court in this instance. See *Wille* v. *Southwestern Bell Telephone Co.* (1976), 219 Kan. 755, 549 P. 2d 903.

ed with the remaining issue of whether Ohio Bell demonstrated wilful or wanton misconduct in failing to list the customer's name in the proper section of the classified directory. Although a limitation-of-liability clause for damages caused by one's own negligence may be valid and enforceable, it is ineffective where the party to the contract seeking protection under the clause has failed to exercise any care whatsoever toward those to whom he owes a duty of care. See *Thomas* v. *Atlantic Coast Line R. Co.* (C. A. 5, 1953), 201 F. 2d 167; Prosser on Torts (4 Ed.), 444, Section 68; and for this court's latest pronouncements on the definition of "wanton misconduct," see *Hawkins* v. *Ivy* (1977), 50 Ohio St. 2d 114.

In the instant cause, the evidence reflects that the improper listing of Doctor Berjian's name in the 1973-1974 yellow pages of the Canton directory was due to a clerical error. There was no showing of wilful or wanton misconduct on the part of any of the Ohio Bell employees, and absent such showing, the limitation-of-liability clause is effective. See *Robinson Ins. & Real Estate, Inc., supra* (366 F. Supp. 307); *Southern Bell Telephone Co.* v. *C & S Realty Co.* (1977), 141 Ga. App. 216, 233 S. E. 2d 9; see, generally, Annotation 92 A. L. R. 2d 917.

Because of our holding that the limitation-of-liability clause is a valid and enforceable provision contained in the directory advertising agreement, the judgment of the Court of Appeals is reversed.

*Judgment reversed.*

O'NEILL, C. J., CELEBREZZE, W. BROWN and LOCHER, JJ., concur.

HERBERT and P. BROWN, JJ., concur in paragraph one of the syllabus and the judgment.