OPINION
This matter is before this court upon the appeal of defendant, Steven L. Stultz, pro se, from a decision of the Franklin County Municipal Court granting judgment against defendant and in favor of plaintiff, CME Federal Credit Union, in the amount of $2,852.44, plus interest and costs. Defendant appeals, setting forth two assignments of error:
 [1.] The trial court erred in ruling in favor of the plaintiff-appellant [sic] for default judgment. The preponderance of the evidence did not dictate that the defendant-appellee [sic] has defaulted on his installment loan.
 [2.] The trial court erred in denying the plaintiff-appellant [sic] a continuance at trial. This continuance should have been granted in order for plaintiff-appellant [sic] to produce an essential witness to his case in chief.
On September 12, 1996, defendant entered into a thirty-six month installment loan agreement with plaintiff, in which he paid $2,201.09 on an existing account and borrowed an additional $4,000. Pursuant to the terms of the agreement, defendant was obligated to make thirty-five monthly payments of $218.17 and one final payment of $190.81. As security for the loan, defendant pledged a 1988 Pontiac Grand Am. On October 4, 1996, the security interest was transferred to a 1987 Ford truck.
In the ensuing months, defendant became delinquent on the loan and the truck was repossessed. On March 5, 1997, defendant signed a document entitled "Agreement for Return of Collateral" ("agreement"), which stated, in its entirety:
 The CME Federal Credit Union and Steven L. Stultz, agree as follows:
 1. The Credit Union has repossessed, through an independent contractor, a 1987 FORD 155 STYLES TRUCK, which was collateral for a promissory note and security agreement signed by the Member on the 4th day of October 1996.
 2. The Member was in default of the terms and conditions of the note and security agreement by virtue of his/her failure to make timely payments.
 3. The Credit Union agrees to allow the collateral to be returned to the Member under the following conditions:
 A. The Member must deposit with the Credit Union two additional monthly payments in the amount of $436.34 which the Credit Union will hold as additional security.
 B. The Member must reimburse the Credit Union in the amount of $230.00 for its costs and expenses incurred in the repossession of the collateral.
 C. The Member must bring all accounts with the Credit Union current. This amount is $849.20.
D. The total due under A, B C is $1,515.54.
 E. The Member must provide the Credit Union with a prepaid policy of insurance on the collateral.
 4. The Credit union and the Member agree that the deposit of the two installment payments are to be held as additional security, and are not to be used as payment on the account in the event the Member misses a monthly installment. These funds may be used to reduce the payoff on the account should the Member decide to pay the loan off, or can be used by the Member as the final two payments.
 5. The Member acknowledges that all provisions of the note and security agreement referenced above remain in full force and effect.
 6. The Member acknowledges that the Credit Union has the right to exercise its rights under the terms and conditions of the note and security agreement to collect this debt should the Member again be in default. This includes repossession of the collateral.
Pursuant to the terms of the agreement, defendant's vehicle was returned to him in exchange for his payment of $1,515.54.
Later in 1997, defendant again failed to make monthly payments on the loan and the truck was repossessed a second time. By letter dated October 29, 1997, plaintiff notified defendant that his truck was to be sold at a public auction to be held on November 18, 1997. Thereafter, the truck was sold, and the proceeds of the sale (less expenses) were applied to defendant's account balance. By letter dated November 21, 1997, plaintiff advised defendant that a deficiency balance remained on his account and that if defendant did not make arrangements to liquidate the balance, appropriate legal action would be taken.
Because defendant made no arrangements to liquidate the balance due on his account, plaintiff, on June 17, 1998, filed a complaint in the Franklin County Municipal Court. The case was originally set for a non-jury trial on September 17, 1998, but was continued until November 10, 1998. A trial to the court was held on that date, and judgment was rendered in favor of plaintiff in the amount of $2,852.44, plus interest at 13.9% per annum from June 11, 1998 and costs. The judgment was formalized by entry dated November 16, 1998. Defendant has timely appealed.
By his first assignment of error, defendant asserts that the trial court erred in finding that defendant defaulted on the installment loan under the terms of the agreement entered on March 5, 1997. Specifically, defendant asserts that even though he failed to make monthly payments, he did not default on the loan because his account contained enough money (in the form of the two additional installment payments he made in an effort to cure his original default) to satisfy his monthly installment obligations and that plaintiff should have applied this money toward his loan balance.
As previously noted, the agreement specifically states in paragraph four that the two additional installment payments were to be held by plaintiff as additional security, and could be used only to reduce the payoff on the account if defendant decided to pay the loan off, or as the final two payments, but not as payment on the account in the event defendant missed a monthly installment. Although defendant concedes that he signed the agreement,[1] he argues that the terms of the agreement were subsequently orally modified by one of plaintiff's employees, Greg Cooper, to the effect that defendant could utilize the security payments to cover any default status of the loan.
The language in the agreement could not be more clear. Under the specific terms of the agreement, the $436.64 paid by defendant as additional security could not be used as payment on the account in the event defendant missed a monthly installment. Although defendant testified that Cooper orally modified the terms of the agreement to allow defendant to utilize the $436.64 paid by defendant as additional security to cure any subsequent default, no evidence corroborated that claim. Cooper did not testify at trial. In contrast to defendant's testimony regarding the alleged modification of the agreement, David Gates, plaintiff's collection manager and Cooper's supervisor, testified that the March 5, 1997 agreement was binding, that he was unaware of any modification to the agreement, either oral or written, and that it would have been an unauthorized act on the part of Cooper to agree to any modification of the terms of the agreement.
"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279, syllabus. A court of appeals must be guided by the presumption that the findings of the trier of fact are correct. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. After reviewing the testimony of the parties, the March 5, 1997 agreement, and the other exhibits contained in the record, we find that the trial court's judgment is supported by competent, credible evidence and, accordingly, we overrule defendant's first assignment of error.
By the second assignment of error, defendant contends that the trial court erred in denying his motion for a continuance. The decision whether to grant or deny a continuance is left to the sound discretion of the trial court. Hartt v.Munobe (1993), 67 Ohio St.3d 3, 9. Absent an abuse of discretion, an appellate court must not reverse a trial court's decision to deny a continuance. State v. Unger (1981), 67 Ohio St.2d 65, 67. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
On the morning of trial, defendant, apparently realizing that Cooper would not be testifying, sought a continuance in order to secure Cooper as a witness to testify as to the alleged oral modification of the agreement. The court denied defendant's motion, opining that a last-minute continuance was not in the interest of justice. Defendant again moved for a continuance during the course of the trial. Upon determining that defendant had made no effort to compel Cooper's appearance at trial, the court again denied the motion.
Defendant argues that he should have been granted the continuance because he was unfamiliar with the procedure for compelling the presence of witnesses. However, it is well-established that "[p]ro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not be to accorded greater rights and must accept the results of their own mistakes and errors." Meyers v. First Natl.Bank (1981), 3 Ohio App.3d 209, 210. Furthermore, even in those instances when a party may not have witnesses ready to testify, the discretion to grant or deny a motion for continuance remains with the trial court. Jackson Twp. v. Stickles (Mar. 21, 1996), Franklin App. No. 95APC09-1264 (1996 Opinions 1029). In refusing to grant the continuance, the trial court noted that defendant had made no effort to compel Cooper's appearance at trial. Finally, when considering the propriety of a continuance, the court may balance the potential prejudice to the party requesting the continuance against the court's right to control its dockets and the public's interest in the prompt and efficient dispatch of justice. State v. Reeder (Aug. 25, 1988), Franklin App. No. 88AP-295, unreported (1988 Opinions 2971). In the instant case, the trial court determined that a last minute continuance would not be in the interest of justice. Upon review of the record, including the reasons cited by the trial court, we cannot find that the trial court abused its discretion in refusing to grant the continuance. Accordingly, the second assignment of error is overruled.
Having overruled both of defendant's assignments of error, we hereby affirm the judgment of the Franklin County Municipal Court.
Judgment affirmed.
BOWMAN and TYACK, JJ., concur.
[1] Upon review of the agreement, we note that it was signed by defendant only; no signature of any person representing plaintiff appears anywhere in the agreement. However, we find that the absence of plaintiff's signature does not affect either the validity or enforceability of the agreement. "The existence of a valid contract does not necessarily require the signature of all parties to the contract." American States Ins. Co. v. Honeywell,Inc. (Mar. 1, 1990), Cuyahoga App. No. 56522, unreported, following Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.
(1978), 54 Ohio St.2d 147. Moreover, defendant has made no argument, either in the trial court or on appeal to this court, that the agreement was invalid as a result of plaintiff's failure to sign it. Further, defendant's actions in depositing the sum required under the agreement clearly establish that he recognized the existence of a valid agreement.