[Cite as *Am. Business Invests., L.L.C. v. Shaeena & Allos, L.L.C.*, 2023-Ohio-739.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

American Business Investments, LLC      Court of Appeals No.  L-21-1134

    Appellant      Trial Court No.  CI0202003314

v.

Shaeena and Allos, LLC      **DECISION AND JUDGMENT**

    Appellee      Decided:  March 10, 2023

* * * * *

Matthew T. Kemp, for appellant.

Marjan Neceski, for appellee.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, American Business Investments, LLC ("ABI"), from the June 11, 2021 judgment of the Lucas County Court of Common Pleas granting the motion for summary judgment filed by appellee, Shaeena and Allos, LLC ("S&A").  For the reasons that follow, we affirm.

## Assignments of Error

I.  First Assignment of Error:  The trial court erred in deeming the lease invalid as a matter of law, because there are disputed fact questions as to whether S&A manifested its binding assent to the lease.

II.  Second Assignment of Error: The trial court erred in finding that ABI's failure to make the new lease payment rendered the lease invalid, because there are disputed factual [questions] as to (1) S&A's failure to follow the parties' agreed process for that payment, and (2) ABI's substantial performance of the payment term.

III.  Third Assignment of Error:  The trial court erred in failing to address ABI's estoppel claim.

## Background

### *Factual History*

{¶ 2} In 2012, ABI and M&S Navarre Holdings, LLC ("M&S") entered into a commercial lease (hereinafter "2012 lease") for ABI to lease property located on Navarre Avenue in Oregon, Ohio for the purpose of operating a Biggby coffee franchise.  M&S's interest in the lease was later assigned to S&A.  The parties agree that the 2012 lease expired on May 31, 2019.  The 2012 lease contained a holdover provision which provided that if ABI continued to occupy the premises after the expiration of the lease and S&A continued to accept rent, a month-to-month tenancy would be created.

{¶ 3} In 2020, the parties entered into negotiations for a new lease, and attorneys for the parties exchanged emails negotiating the terms of the new lease from at least March of 2020 through June 2, 2020. Ultimately, the attorneys agreed on the terms of a new lease (hereinafter "new lease"[1]). This agreement is reflected in emails between the attorneys.

{¶ 4} During negotiations, on May 29, 2020, ABI's attorney, W. Reed Hauptman, emailed S&A's attorney, Matthew Cull, that ABI was prepared to sign off on the lease subject to three final items. Cull responded by stating that he had updated the lease as requested in Hauptman's email, answering a question posed by Hauptman, and attaching the updated lease. Cull also stated that he had the signature page of Mario Kiezi, S&A's managing member, and asked how long it would take to get signatures for ABI. Hauptman replied that ABI "signed off on the lease" and then requested "Can you please have your client send [ABI] an invoice that includes the June base rent, June CAM payment and the $22,000 New Lease Payment.[2] If they can receive that today they will get it processed asap. Please also have your client transmit the final, agreed to lease to them with the invoice so that they can sign and return the same."

{¶ 5} On June 2, 2020, Cull sent an email to Kiezi requesting that Kiezi forward the "attached agreed-upon Lease" to ABI for signature along with an invoice including

---

[1] Our use of the term "new lease" is for ease of discussion only and should not be construed as a statement regarding the validity of the lease.
[2] The term "new lease payment" is a term used to refer to a one-time payment required by the new lease.

3.

the June base rent, June CAM payment, and the $22,000 new lease payment. On that same date, Cull forwarded to Hauptman the email Cull had sent to Kiezi, and additionally Cull stated that he "attached the final versions in word and pdf for your records. Per our call, the only change I made to that version sent on 5.29.20 was to make the Effective Date June 1, 2020." That version is the new lease, which ABI seeks to have declared valid and binding. The new lease contains the following relevant sections:

**Section 2.4 – New Lease Payment:**

Simultaneous with the execution of this Lease, Tenant shall make a one-time payment to Landlord in the amount of Twenty-Two Thousand Dollars ($22,000)("new lease payment"), in consideration of Landlord's expenses and lost rent in turning down a different potential tenant for the Premises. Notwithstanding anything else to the contrary contained herein, the effectiveness of this Lease is contingent on Landlord's receipt of the new lease payment, which is non-refundable to Tenant.

\* \* \*

**Section 19.15 – Execution of Lease by Landlords:**

The submission of this document for examination and negotiation does not constitute an offer to lease, or a reservation of, or an option for, the Premises, and this document shall be effective and binding only upon the execution and delivery hereof by both Landlord and Tenant.

**{¶ 6}** As of June 9, 2020, ABI had not received the requested invoice. Hauptman asked Cull to check on the invoice's status. Cull responded that he "reached out to Mario and his office manager on this." Hauptman again reached out regarding the status of the invoice on June 22, 2020.

**{¶ 7}** On August 3, 2020, Hauptman sent the new lease, signed by ABI, to Cull and asked for a copy of the fully-executed new lease. He additionally stated that ABI was all "set on the payment end regarding new lease payment and etc." Despite these overtures, ABI did not receive a copy of the fully-executed new lease or invoice for the new lease payment and the new lease payment was never made.

**{¶ 8}** Then, on September 23, 2020, Cull sent a letter advising ABI that the 2012 lease expired on May 31, 2019, and notifying ABI that S&A was terminating the holdover month-to-month tenancy as of October 31, 2020 (hereinafter "termination notice").

*Procedural History*

**{¶ 9}** ABI filed a complaint in the trial court seeking a declaratory judgment that the new lease is a "valid and binding agreement" and that the termination notice is ineffective and invalid. Alternatively, ABI requested a judgment declaring that S&A is estopped from denying the validity of the new lease and is estopped from enforcing the termination notice.

{¶ 10} S&A filed a motion to dismiss the complaint on December 10, 2020. The trial court converted this motion to a motion for summary judgment on January 22, 2021, and gave the parties additional time to conduct discovery. In discovery, S&A produced a signature page executed by Kiezi on either April 28, 2020, or May 28, 2020.[3] This signature page was part of a previous version of the lease. The parties agree that this signature page was not delivered to ABI.

{¶ 11} After the discovery period, the parties filed supplemental briefing and the court granted S&A's motion for summary judgment on June 11, 2021 due to ABI's failure to pay the new lease payment and the lack of delivery of Kiezi's signature page to ABI.

{¶ 12} ABI appealed.

### Standard of Review

{¶ 13} "Our review of a summary judgment decision is de novo basis. Thus, we undertake our own independent examination of the record and make our own decision as to whether the moving party is entitled to summary judgment." (Citations omitted.). *DeFoe v. Schoen Builders, LLC,* 6th Dist. Wood No. WD-18-031, 2019-Ohio-2255, ¶ 24.

---

[3] This signature page was dated April 28, 2020, however, S&A states "April" was erroneously left in, rather than "May." Both Kiezi and Cull aver that this signature page was not delivered to ABI, but rather was to be held by Cull and attached to a fully executed lease agreed to by both parties.

6.

**Summary Judgment Standard**

{¶ 14} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, and that is adverse to the nonmoving party.

{¶ 15} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264, (1996). If the moving party meets this initial burden, the nonmoving party must set forth specific facts, by way of proper Civ.R. 56(C) evidence, showing a genuine issue for trial exists. *Id.* at 293.

**First and Second Assignments of Error**

{¶ 16} As both the first and second assignment of error relate to whether the new lease was valid and binding, we will consider them together.

{¶ 17} In its first assignment of error, ABI argues that the trial court erred in finding the new lease invalid as there are disputed factual questions as to whether S&A manifested its binding assent to the new lease. In the second assignment of error, ABI

7.

contends that the trial court erred in finding that ABI's failure to make the new lease payment rendered the new lease invalid.

{¶ 18} S&A counters there can be no contract as there are specific requirements, both based upon statutory law and the contract, that were not met.

{¶ 19} With respect to the statutory requirements, S&A points to R.C. 5301.01(A), which requires any lease of an interest in real property be signed by the lessor and that the signing be acknowledged by the lessor "before a judge or clerk of a court of record in this state, or a county auditor, county engineer, notary public, or mayor, who shall certify the acknowledgement and subscribe the official's name to the certificate of the acknowledgement." S&A also directs our attention to the statute of frauds, R.C. 1335.04, which requires leases to be in writing. With respect to specific requirements of the contract, S&A argues that there were preconditions to the contract that were not met – the payment of the new lease payment and execution and delivery of the new lease to ABI.

{¶ 20} As we find it determinative, we will begin our analysis with the lack of delivery of the new lease. Section 19.15 of the new lease (hereinafter Section 19.15) requires execution and delivery by both ABI and S&A in order for the new lease to be effective.

{¶ 21} ABI maintains that this condition was met, arguing that "Section 19.15 does *not* say that the parties must deliver an *executed copy,* only that they must (i) execute the [l]ease, and (ii) deliver the final [l]ease." (Emphasis sic.) ABI contends that

8.

there is a factual dispute as to whether Kiezi's signature applies to the new lease and that Cull's email with the final unsigned version on June 2, 2020 was sufficient to meet the delivery requirement. ABI also suggests that, even if Section 19.15 is not fully complied with, there was at least substantial compliance as "Cull's email attaching the 'final version,' together with [Cull's] representation that his client had executed the [new l]ease, was for all practical purposes the same thing as sending an executed version," and that, regardless, Section 19.15 "cannot trump the abundant evidence * * * that S&A assented to the final Lease." ABI cites to *Richard A. Berjian, D.O. v. Ohio Bell Tel. Co., Inc.*, 54 Ohio St.2d 147, 375 N.E.2d 410 (1978), as support for its argument that terms such as those found in Section 19.15 are not dispositive, but "simply one piece of evidence to weigh in the overall determination of whether there was a meeting of the minds forming a binding contract."

{¶ 22} We find ABI's reliance on the *Berjian* case is misplaced. ABI argues Section 19.15 is not dispositive and that, in *Berjian,* the Ohio Supreme Court found that there was a binding agreement despite the fact that neither party signed the written agreement and "the written agreement specifically contemplated signatures as evidence of assent." However, in *Berjian*, the court specifically stated that "[a]lthough it is well-established that courts will give effect to the manifest intent of the parties where there is clear evidence demonstrating that the parties did not intend to be bound by the terms of an agreement until formalized in a written document and signed by both * * *, in the

9.

cause sub judice *there is no evidence of such intent*." (Emphasis added.) *Id.* at 151. The court then found that "the directory-advertising agreement did not require the signature of the customer to be effective." *Id.* at 152.

{¶ 23} "In the absence of an agreement to the contrary, there is no general rule in Ohio that requires a contract to be physically delivered before it is binding." *Wallace, D.D.S., LLC, v. Kalniz, Choksey Dental-Ralston, Inc.*, 6th Dist. Wood No. WD-12-048, 2013-Ohio-2944, ¶ 25, citing *Indus. Heat Treating Co., Inc. v. Indus. Heat Treating Co.*, 104 Ohio App.3d 499, 508, 662 N.E.2d 837 (6th Dist.1995). In this case, unlike the facts in *Berjian*, the new lease specifically states that it will not be effective until it is executed and delivered by both parties. In *Wallace*, we found that the failure to deliver *executed documents* was fatal to an agreement's validity when "the unambiguous terms of the agreement conditioned the enforceability of the agreement on execution *and* delivery." (Emphasis sic.) *Id.* at ¶ 26.

{¶ 24} Although ABI argues that, when read in its entirety, the purpose of Section 19.15 is "to prevent the formation of a contract based on a preliminary form or draft," we find that, as in *Wallace*, here the new lease unambiguously requires execution and delivery in order for the lease to be effective. Even assuming for the sake of argument that the new lease was signed by both parties, there is no dispute that an executed lease was not delivered. Pursuant to *Wallace*, this failure of delivery is fatal to ABI's claim that a valid contract exists.

10.

*Substantial Compliance*

**{¶ 25}** With respect to ABI's substantial compliance argument, "[s]ubstantial compliance is a concept that allows a party to enforce a contract where the party seeking enforcement has substantially complied with its terms. A nominal or trifling breach is excused. However, where the performance of a term is essential to the purpose of the contract, a default of that term is not excusable no matter how trifling." *Sims v. Anderson*, 2015-Ohio-2727, 38 N.E.3d 1123, ¶ 17 (4th Dist.). S&A seems to argue that the doctrine does not apply without a valid contract; however, we need not decide whether the doctrine is limited to fully executed contracts. Even assuming that substantial compliance applies here, we do not find substantial compliance. As discussed above, Section 19.15 requires the delivery of an executed document. The failure to deliver an executed lease is not merely nominal or trifling.

**{¶ 26}** For these reasons, we find that the trial court did not err in finding that the delivery of an executed contract was a condition precedent to the formation of a new lease. Because it is undisputed that an executed copy of the lease was never delivered, the trial court correctly concluded that the parties had not entered into a new lease agreement. Therefore, ABI's first assignment of error is found not well-taken.

**{¶ 27}** We note that ABI's first and second assignments of error both allege that the trial court erred in finding that the parties had not entered into a binding lease. In light of our finding on ABI's first assignment of error—specifically, that the parties did

not enter into a new lease agreement due to the lack of delivery—S&A's remaining arguments regarding the failure of conditions precedent, including the failure to make the new lease payment, at issue in the second assignment of error are moot. Accordingly, we also find ABI's second assignment of error not well-taken.

**Third Assignment of Error**

{¶ 28} ABI argues the trial court erred by not addressing its estoppel claim. In addition to claiming that there was a valid and binding contract, ABI also asserts that S&A is estopped from denying the validity of the new lease based on S&A's conduct during and after the negotiations. ABI maintains that the statements made by Cull during the negotiations as well as S&A's acceptance of rent at the new rate "coupled with its months-long silence on its position on the validity of the Lease" support its claim of equitable estoppel.

*Equitable Estoppel*

{¶ 29} Ohio law recognizes multiple "estoppel" theories for both claims and defenses. ABI's complaint was silent as to which estoppel theory it was asserting. However, in its motion for summary judgment and its appellate brief, ABI identifies "equitable estoppel" as the basis on which S&A cannot deny that a contract was formed. Equitable estoppel "is a defense to a legal or equitable claim[.]" *Ford Motor Credit Co. v. Ryan,* 189 Ohio App.3d 560, 2010-Ohio-4601, 939 N.E.2d 891, ¶ 94 (10th Dist.). In other words, it is "a shield." *Id.* Since equitable estoppel is a defense, it is axiomatic that

12.

this theory cannot stand on its own as a claim for relief. *Id.* Further, since there were no claims pending against ABI, it had no basis to assert an equitable estoppel affirmative defense.

*Promissory Estoppel*

{¶ 30} It appears from its brief that ABI actually intended to argue an unalleged claim of promissory estoppel as the basis on which the trial court should have held that a contract had been formed. Promissory estoppel, rather than equitable estoppel, is a claim on which relief can be granted. *Id.*

{¶ 31} Promissory estoppel is a cause of action which must be alleged in a complaint pursuant to Civ.R. 8(A). *See id.* The elements of a promissory estoppel claim include "(1) a clear and unambiguous promise; (2) reliance by the party to whom the promise is made; (3) reliance is reasonable and foreseeable; and (4) injury resulting from reliance." *Casillas v. Stinchcomb,* 6th Dist. Erie No. E-04-041, 2005-Ohio-4019, ¶ 18. While Ohio's notice pleading, established under Civ.R. 8(A), does not require a claim to be stated with particularity, the complaint must give the defendant fair notice of the claims against them and an opportunity to respond. *See Clemens v. Katz,* 6th Dist. Lucas No. L-08-1274, 2009-Ohio-1461, ¶ 7.

*Estoppel Analysis*

{¶ 32} Put simply, the record here does not permit our review of ABI's third assignment of error as a promissory estoppel claim. ABI's complaint identified only a

single claim for declaratory judgment. The "estoppel" argument was raised as an alternative theory in the final paragraph of its complaint, and was conditioned on ABI being unsuccessful in obtaining a declaratory judgment in its favor. Even providing ABI the most liberal construction of Civ.R. 8(A), we cannot find that ABI has alleged a claim for promissory estoppel sufficient to put S&A on notice to formulate a response, particularly in light of the limited scope of this declaratory judgment action. Moreover, although S&A recognizes that ABI's argument is based upon the doctrine of equitable estoppel, not promissory estoppel, S&A's recognition of ABI's pleading error does not permit us to consider this claim. We find that construing ABI's "equitable estoppel" claim as a completely separate cause of action, and then evaluating that unalleged claim on a record devoid of facts pertaining to it, would be improper.

*Declaratory Judgment of Estoppel Claim*

{¶ 33} Moreover, any analysis of ABI's estoppel claim, under either a theory of equitable or promissory estoppel, would not be properly before the court in a declaratory judgment action. Declaratory judgments are a cause of action authorized under R.C. Chapter 2721. R.C. 2721.03 states, in relevant part, that "any person interested under a deed, will, written contract, or other writing constituting a contract" may file a declaratory judgment action to have their rights under the instrument determined. "An action for declaratory judgment is a remedy in addition to *other legal and equitable* remedies and may be granted 'where the court finds that speedy relief is necessary to the

preservation of rights which might otherwise be impaired.'" (Emphasis added.) *State ex rel. Northwood v. Court of Common Pleas of Wood County,* 109 Ohio App.3d 487, 490, 672 N.E.2d 695 (6th Dist.1996), quoting *State ex rel. Taft v. Court of Common Pleas of Franklin County*, 63 Ohio St.3d 190, 586 N.E.2d 114 (1992). Since declaratory judgment is a remedy, we find that ABI's attempt to seek declaratory judgment on another remedy—its estoppel claim—is unfounded.

*Bypass of Forcible Entry and Detainer Action*

{¶ 34} Further, we find that ABI's equitable estoppel claim—assuming, arguendo, this defense could have been properly alleged in its complaint—cannot be considered as part of its declaratory judgment action because it would bypass the forcible entry and detainer proceedings that would be initiated with S&A's termination of ABI's holdover tenancy and notice to vacate. We previously noted in *State ex rel. Northwood* that "[d]eclaratory judgment actions are not permitted when they would bypass rather than supplement a legislative scheme to provide for an adjudicatory hearing in special statutory proceedings." *Id.* at 491. "[F]orcible entry and detainer actions are intended to 'provide a summary, extraordinary, and speedy method for the recovery of the possession of real estate.'" *Eckart v. Newman,* 6th Dist. Williams No. WM-18-006, 2019-Ohio-3211, ¶ 21, quoting *Cuyahoga Metro. Hous. Auth. v. Jackson,* 67 Ohio St.2d 129, 131, 423 N.E.2d 177 (1981). Importantly, forcible entry and detainer actions are provided solely by statute and constitute a special statutory proceeding. *See State ex rel. Tri Eagle*

15.

*Fuels, L.L.C. v. Dawson,* 157 Ohio St.3d 20, 2019-Ohio-2011, 131 N.E.3d 20, ¶ 10 (holding that the forcible entry and detainer action was a special statutory proceeding limited to resolution of possession of the premises despite other pending litigation). ABI's equitable estoppel claim essentially requested that the trial court consider its affirmative defense to a forthcoming forcible entry and detainer action before S&A had even filed that action. While the parties developed extensive arguments related to that claim, consideration of ABI's equitable estoppel claim based on S&A's conduct would have improperly bypassed the special statutory proceedings provided by R.C. Chapter 2721 by resolving the entire issue rather than supplement those proceedings. Therefore, even assuming all of ABI's allegations regarding S&A's conduct were true, and that the equitable estoppel defense would be successful to prevent its eviction, that affirmative defense is not subject to declaratory judgment proceedings because it would bypass the forcible entry and detainer procedures established in R.C. Chapter 2721.

{¶ 35} In sum, ABI's estoppel claim was not before the trial court because it improperly alleged the defense of equitable estoppel rather than a claim for promissory estoppel. Additionally, any estoppel claim is not properly subject to a declaratory judgment action and resolution of that claim would bypass the forcible entry and detainer proceedings rather than supplement them. Because ABI did not properly file a promissory estoppel claim, the trial court did not err when it did not address such claim. Also, because the trial court's consideration of ABI's estoppel claim in a declaratory

16.

judgment action would bypass rather than supplement the forcible entry and detainer proceedings, the trial court's consideration of that claim and our subsequent review of the trial court's judgment would be premature. For these reasons, we find ABI's third assignment of error not well-taken.

### Conclusion

{¶ 36} For these reasons, we find ABI's first, second, and third assignments of error not well-taken. The June 11, 2021 judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, ABI is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.                         _____

                                             JUDGE

Myron C. Duhart, P.J.
CONCUR.                          _____

                                             JUDGE

Christine E. Mayle, J.
DISSENTS AND WRITES
SEPARATELY.

**MAYLE, J., dissenting.**

{¶ 37} Respectfully, I dissent.

{¶ 38} While I agree that the written contract contains two express conditions precedent that were not satisfied— i.e., ABI did not pay the new lease payment as required by Section 2.4, and the parties did not exchange fully-executed copies of the lease agreement as required by Section 19.15—there is a genuine dispute of material fact regarding whether the parties waived these provisions and thereby manifested their binding assent to the written lease agreement through their acts and conduct. For that reason, I would find the first assignment of error well-taken, and I would dismiss the remaining assignments of error as moot.

{¶ 39} As an initial matter, I note that ABI argued in its summary judgment briefing, and again on appeal, that S&A should be "estopped" from denying the validity of the lease due to "S&A's continued acceptance of rent—coupled with its months-long silence on its position on the validity of the Lease * * *." Confusingly, ABI mischaracterizes this argument as an alternative *claim* for "*equitable* estoppel"—even though, as the majority correctly recognizes, "[the] complaint identified only a single claim for declaratory judgment." Unfortunately, the majority only adds to the confusion by concluding that ABI "actually intended to argue an unalleged claim of promissory estoppel * * *[,]" and by providing a lengthy explanation as to why neither an equitable estoppel nor promissory estoppel claim could have been asserted in this case—even though it is clear that neither an equitable estoppel nor promissory estoppel claim was asserted in this case.

18.

{¶ 40} Although I agree that ABI was certainly inartful when it characterized its estoppel arguments as a separate *claim* for "*equitable* estoppel," the majority misses the more obvious interpretation of the pleadings, briefing, and arguments in this case— i.e., ABI is actually arguing the concept of *waiver by estoppel*, which is part and parcel of its pleaded declaratory judgment claim that the lease agreement is valid and binding because S&A manifested its assent to the written agreement through its acts and conduct.

{¶ 41} Although ABI inaccurately couched its estoppel arguments in terms of "*equitable* estoppel" rather than "*waiver by* estoppel," the two concepts are so closely related that courts—including this court—have confused them on occasion. *See J. Richard Industries, LP v. Stanley Machining, Inc.*, 6th Dist. Lucas No. L-03-1024, 2004-Ohio-3804, ¶ 17-21 (When considering whether issues of fact remained regarding whether one party "waived its right" to insist upon certain terms of a contract, this court correctly framed the issue as "waiver by estoppel," but then analyzed whether appellant had asserted a prima facie claim of "equitable estoppel," and ultimately concluded that genuine issues remained regarding "whether J. Richards' actions constituted a waiver of any contract terms * * *."); *see also GuideOne Mut. Ins. Co. v. Reno*, 2d Dist. Greene No. 01-CA-68, 2002 WL 857682, *5 (Apr. 26, 2002), *aff'd sub nom. Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094 ("The legal concepts of waiver and estoppel are often confused with one another * * *."). Indeed, we blurred the line between these two distinct legal concepts in *Checkers Pub, Inc. v. Sofios*, 2016-Ohio-

6963, 71 N.E.3d 731 (6th Dist.), an analogous case that ABI cited and relied upon for its estoppel arguments in the trial court and on appeal.

{¶ 42} In that case, the appellant, Checkers, leased commercial real estate from Sofios and operated a bar on the leased property for several years. Sofios eventually sold the leased property to Main Street, but did not give Checkers advance notice of the sale. Checkers then sued Sofios and Main Street, arguing that it had the right of first refusal to purchase the property under the terms of its written lease with Sofios. In its complaint, Checkers sought declaratory relief, breach-of-contract damages from Sofios, specific performance of its right of first refusal, and damages for intentional interference with contractual rights. Relevant to the instant dispute between ABI and S&A, Sofios argued that Checkers had forfeited its rights under the lease—including the right of first refusal—because Checkers did not follow the required formalities to exercise its option to renew the lease and, therefore, the written lease was no longer valid, Checkers held the lease under a month-to-month tenancy, and the right of first refusal had terminated. In response, Checkers argued that Sofios had never sought forfeiture of the lease for failing to renew according to the terms of the parties' agreement. Instead, Sofios's course of conduct—including the acceptance of "increased rent" payments—indicated that it had waived strict compliance with the renewal procedures, and the written lease—including Checkers' right of first refusal—was therefore valid. *Id.* at ¶ 31-32.

20.

{¶ 43} The trial court granted summary judgment to defendants, but we reversed on appeal. On appeal, we held that even if it is assumed that the written lease unambiguously required Checkers to follow certain formalities to exercise its renewal option—and those formalities were not followed—"the trial court erred by failing to find the Sofios are estopped from asserting a failure to renew the lease in writing because the Sofios waived their right of forfeiture by their course of conduct * * *[,]" including but not limited to the acceptance of rent payments from Checkers. *Id.* at ¶ 30-35. Although we correctly identified and applied the doctrine of waiver, we nonetheless muddied the waters to some degree by noting that "'[t]he existence of an *equitable estoppel* is a mixed question of law and fact[,]'" before concluding that "[i]n this case, the facts are undisputed. We find appellants' continued occupation of the leased property and the payment of rent, without objection by the Sofios until after the property was sold, bars the Sofios from asserting that there was breach of the written renewal option of the lease." (Emphasis added.) *Id.* at ¶ 36, quoting *Finkbeiner v. Lutz,* 44 Ohio App.2d 223, 229, 337 N.E.2d 655 (1st Dist.1975).

{¶ 44} "Waiver by estoppel"—as applicable in *Checkers* and the instant case—is distinct from "equitable estoppel." "'[W]aiver by estoppel' exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it." *J. Richard Industries* at ¶ 20, citing *Motz v. Root*, 53 Ohio App.

21.

375, 376-377, 4 N.E.2d 990 (9th Dist.1934). Simply put, "[w]aiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory, or constitutional." *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 49. "Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right. A waiver may be enforced by the person who had a duty to perform and who changed his or her position as a result of the waiver." *Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St.3d 275, 279, 690 N.E.2d 1267 (1998). As the Ohio Supreme Court has explained, "[a]lthough waiver is typical of estoppel, estoppel is a separate and distinct doctrine. With estoppel, it is not necessary to intend to relinquish a right." *Id.*

{¶ 45} That is, "'[e]quitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment.'" *Doe v. Archdiocese of Cincinnati,* 116 Ohio St.3d 538, 2008-Ohio-67, 880 N.E.2d 892, ¶ 7, quoting *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34, 641 N.E.2d 188 (1994). Equitable estoppel usually requires actual or constructive fraud. *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 114 Ohio St.3d 183, 2007-Ohio-3831, 870 N.E.2d 1174, ¶ 64.

{¶ 46} While it would have been more accurate if ABI had referenced waiver by estoppel rather than equitable estoppel, there would have been no true, practical

22.

difference to the main issue in this case as argued by the parties—whether S&A clearly manifested its assent to the written lease by its acts and conduct, even though the conditions precedent of Sections 2.4 and 19.15 were not satisfied. Or, if this same exact proposition is stated in terms of "estoppel"—whether S&A is estopped from denying the validity of the written lease because S&A, through its acts and conduct, waived its right to enforce the conditions precedent of Sections 2.4 and 19.15. Despite the parties' confusion of the issues, these are not true "alternative" arguments; they are one and the same.

{¶ 47} I would therefore take the approach that has been taken by other appellate courts in this same situation and simply note that the "estoppel" arguments the parties have briefed and argued are "better explained via the related concept of waiver by estoppel[.]" *J&B Fleet Indus. Supply, Inc. v. Miller*, 7th Dist. Mahoning No. 09 MA 173, 2011-Ohio-3165, ¶ 69-80 (Noting that appellant's argument that summary judgment was improper because "equitable estoppel applies to prevent [appellee] from asserting the bankruptcy discharge defense" was more appropriately characterized as a "waiver by estoppel" argument.).

{¶ 48} It is well-settled that "any of the terms of a contract" may be waived "by the acts and conduct of the parties." *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427, 135 N.E. 537 (1922), paragraph three of the syllabus. Waiver of "'the right to literal compliance with contract provisions * * *'" can be express or implied from the conduct

23.

of the parties. *Quest Workforce Solutions, LLC v. Job1USA, Inc.*, 2016-Ohio-8380, 75 N.E.3d 1020, ¶ 40 (6th Dist.), quoting *Daniel E. Terreri & Sons, Inc. v. Mahoning Cty. Bd. of Commrs.,* 152 Ohio App.3d 95, 2003-Ohio-1227, 786 N.E.2d 921, ¶ 77 (7th Dist.); *see also Checkers*, 2016-Ohio-6963, 71 N.E.3d 731, at ¶ 33 ("Waiver can occur by a subsequent oral or written agreement or by the acts and conduct of the parties."). That is, "[w]aiver of a contract term can occur when a party conducts itself in a manner inconsistent with an intention to insist on that term." *Vivi Retail, Inc. v. E & A Northeast Ltd. Partnership*, 8th Dist. Cuyahoga No. 90527, 2008-Ohio-4705, ¶ 30 (concluding that landlord waived its right to insist that commercial tenant comply with the 120-day notice provision of the lease). A party asserting waiver must prove it by establishing a clear, unequivocal, decisive act by the other party, demonstrating the intent to waive. *Maghie & Savage, Inc. v. P.J. Dick Inc.*, 10th Dist. Franklin No. 08AP-487, 2009-Ohio-2164, ¶ 27.

{¶ 49} Even contractual terms that prohibit oral modifications of the written agreement, or that require any waivers to be in writing, can be waived. *See 3637 Green Rd. Co., Ltd. v. Specialized Component Sales Co., Inc.*, 2016-Ohio-5324, 69 N.E.3d 1083, ¶ 22 (8th Dist.) ("[N]o-oral-modification and written waiver provisions, like any other contractual provision, can be waived by the parties."). That is because "if such clauses are rigidly enforced, then a party could simply insert the clause into an agreement and would be magically protected in the future no matter what that party said or did."

24.

*Fields Excavating, Inc. v. McWane, Inc.*, 12th Dist. Clermont No. CA2008-12-114, 2009-Ohio-5925, ¶ 17.

{¶ 50} Moreover, as this court has recognized, a condition precedent ""'"may be waived by the party to whom the benefit of the condition runs; the waiver may arise expressly or by implication, and the key to its application in a particular case is a showing of some performance pursuant to the terms of the contract."'"" *Czerniak v. Aziz*, 6th Dist. Lucas No. L-10-1211, 2011-Ohio-3112, ¶ 22, quoting *Corey v. Big Run Indus. Park, LLC,* 10th Dist. Franklin No. 09AP-176, 2009-Ohio-5129, ¶ 18, quoting *Mangan v. Prima Constr., Inc.*, 1st Dist. Hamilton No. C-860234, 1987 WL 9466 (Apr. 8, 1987). Whether waiver has occurred is generally a question of fact. *See Eureka Multifamily Group v. Terrell*, 6th Dist. Lucas No. L-14-1152, 2015-Ohio-1861, ¶ 13 ("Whether a landlord's conduct constitutes a waiver is a question of fact.").

{¶ 51} In my view, the record in this case contains enough evidence to create a genuine dispute of material fact regarding whether the parties manifested their binding assent to the lease agreement and waived the requirements of Section 2.4 (the new lease payment) and Section 19.15 (acceptance through the exchange of fully-executed documents).[4]

---

[4] To be clear, although Section 13.03 provides that "[n]o action or inaction by Landlord shall constitute a waiver of a Default and no waiver of Default shall be effective unless it is in writing, signed by Landlord[,]" I do not think Section 13.03 is relevant to this declaratory judgment action. "Default" is defined by Section 13.01 to mean (a) the tenant's failure to pay rent "or any other charges required to be paid by Tenant * * *," and such failure continues for five days after such charges become due and payable, and

25.

{¶ 52} Here, the record demonstrates that the parties' attorneys negotiated the new lease on behalf of their clients through email correspondence. Neither party argues that its attorney was acting without actual authority at any time during these negotiations.

{¶ 53} These negotiations concluded at the end of May 2020. On May 29, 2020, ABI's counsel emails S&A's counsel, stating "[m]y client is prepared to sign off on the lease subject to these final items[,]" and proceeds to list three items. That same day (approximately two hours later), S&A's counsel responds by attaching a new draft of the lease that incorporated two of the three suggested edits, and by clarifying the third issue that ABI's counsel had raised in his previous email. S&A's counsel states, "I have Mario's signature page already. How long will it take you to get signatures?"

{¶ 54} On June 2, 2020, at 10:21 a.m., ABI's counsel responds by stating:

> I spoke to my client this morning and they are signed off on the lease. Can you please have your client send them an invoice that includes the June base rent, June CAM payment and the $22,000 New Lease Payment. If they can receive that today they will get it processed asap.

---

(b) the tenant's failure "to perform or observe any terms and conditions of this Lease * * *" *and* such failure continues for 30 days after written notice from landlord. The parties' failure to follow the specific method of acceptance under Section 19.15 does not meet the lease's definition of "Default." Moreover, because the new lease payment required by Section 2.4 is a *condition precedent* rather than a mere "charge" that is payable during the term of the agreement (like rent), ABI's failure to pay the new lease payment cannot be a "Default" as defined by the lease agreement. Regardless, even if ABI's failure to pay the new lease payment is properly characterized to be a "Default" under Section 13.03, such anti-waiver provisions, like any other contractual provision, may be waived. *See, e.g.*, *3637 Green Rd. Co.* at ¶ 22; *Fields Excavating* at ¶ 17.

26.

Please also have your client transmit the final, agreed to lease to them with the invoice so that they can sign and return the same.

{¶ 55} S&A's counsel forwards this email to his clients on June 2, 2020, at 10:49 a.m., stating:

Mario—Per [ABI's counsel's] request, please forward the attached agreed-upon Lease to Tenant for their signature, along with an invoice that includes the (1) June base rent, (2) June CAM payment and (3) the $22,000 New Lease Payment.

They only need to return to you the signature page. Once I get that, I'll compile and return a fully executed copy.

{¶ 56} A few minutes later (at 10:55 a.m. that same day), S&A's counsel forwards his 10:49 email to his clients to ABI's counsel, telling him to "[s]ee below." In this same email, S&A's counsel states "[a]lso, I've attached the final versions in word and pdf for your records. Per our call, the only change I made to the version sent on 5.29.20 was to make the Effective Date June 1, 2020."

{¶ 57} Critically, as of June 2020, ABI began paying the new, higher monthly lease rate pursuant to the new lease agreement, and S&A accepted ABI's rent payments.

{¶ 58} On August 3, 2020, ABI's counsel sends S&A's counsel an email stating:

Attached is the Biggby lease as signed by the tenant. Can you please send me a copy of the fully-executed lease for my records.

27.

Also my client previously informed me that all was set on the payment end regarding new lease payment and etc. Can you please confirm the same with your client.

{¶ 59} Despite several follow-ups, S&A's counsel never sent a fully-executed lease to ABI's counsel. Nonetheless, ABI continued to pay—and S&A continued to accept—monthly rent at the new rate under that lease.

{¶ 60} On September 23, 2020, S&A sent ABI a notice to vacate the premises, claiming that ABI was occupying the premises under a month-to-month tenancy and S&A was terminating that tenancy on October 31, 2020. Despite this notice, however, S&A continued to accept rent payments from ABI at the newly-established rate for several more months. According to ABI, S&A accepted these rent payments until March 2021, when S&A claimed that ABI had a "credit" on its account. In sum, S&A accepted rent from ABI at the new, higher rate that is specified in the disputed lease agreement for a total of nine months (June 2020 through February 2021).

{¶ 61} When these facts are viewed in light most favorable to ABI (as required by Civ.R. 56), it is clear that reasonable minds could differ as to whether the parties expressed their intent to be bound to the lease agreement through their conduct—most importantly, through the payment and acceptance of rent at the newly-established rate for nine months—and thereby waived the requirements of Sections 2.4 and 19.15.

28.

{¶ 62} Finally, I note that the majority's reliance on *Heath Wallace, D.D.S., LLC v. Kalinz, Choksey Dental-Ralston, Inc.*, 6th Dist. Wood No. WD-12-048, 2013-Ohio-2944, is misplaced. In that case, this court concluded that "[b]ecause the unambiguous terms of the agreement conditioned the enforceability of the agreement on execution *and* delivery, the failure to deliver the executed documents to Wallace is fatal to its validity." (Emphasis sic.) *Id.* at ¶ 26. But, unlike here, there was no argument or evidence in *Wallace* that the parties somehow waived the contract's signature and delivery requirement and manifested their binding assent to the agreement through their acts and conduct. *Wallace* is therefore inapposite.

{¶ 63} For these reasons, I dissent. I would find the first assignment of error well-taken and reverse the trial court judgment because, as ABI explained, "THE TRIAL COURT ERRED IN DEEMING THE LEASE INVALID AS A MATTER OF LAW, BECAUSE THERE ARE DISPUTED FACT QUESTIONS AS TO WHETHER S&A MANIFESTED ITS BINDING ASSENT TO THE LEASE." I would dismiss the remaining assignments of error as moot.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.