[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ashland Global Holdings, Inc. v. SuperAsh Remainderman, Ltd. Partnership*, Slip Opinion No. 2025-Ohio-2835.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2835

ASHLAND GLOBAL HOLDINGS, INC., ET AL., APPELLEES, *v.* SUPERASH REMAINDERMAN, LTD. PARTNERSHIP, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ashland Global Holdings, Inc. v. SuperAsh Remainderman, Ltd. Partnership*, Slip Opinion No. 2025-Ohio-2835.]**

*Contracts—A negligent failure to exercise a renewal option does not warrant equitable relief—Lessee's failure to timely exercise its renewal option was negligent, and equitable relief therefore was not warranted—Certified-conflict question answered in the negative—Court of appeals' judgment reversed and cause remanded to court of appeals.*

(Nos. 2023-1448 and 2023-1588—Submitted January 8, 2025—Decided August 14, 2025.)

APPEAL from and CERTIFIED by the Court of Appeals for Franklin County, No. 22AP-638, 2023-Ohio-3556.

_____

DETERS, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, LYNCH, and SHANAHAN, JJ., joined. MATTHEW J. LYNCH, J., of the Eleventh District Court of Appeals, sitting for HAWKINS, J.

**DETERS, J.**

{¶ 1} A lessee did not timely exercise its option to renew multiple leases. When the lessor notified the lessee that the leases would be terminating, the lessee sought a declaratory judgment that its renewal—while untimely—was still effective. The trial court concluded that equity could come to the aid of the lessee to forgive what the court deemed to be an "honest mistake" by the lessee and declared the renewal to be effective. The Tenth District Court of Appeals affirmed.

{¶ 2} In its appeal to this court, the lessor argues that equity cannot trump the unambiguous written renewal conditions of a lease unless there was no meeting of the minds at the time of contract formation due to fraud, misrepresentation, or other similar wrongful conduct. We decline to establish such a broad rule. Traditionally, there has been a place for equity in contractual relations, including when there has been a mistake of fact. But while equity may sometimes excuse a mistake of fact, it will not excuse negligence. And here, the lessee's failure to timely exercise its renewal option was negligent. We therefore reverse the judgment of the Tenth District and remand the case to that court for consideration of the lessee's remaining arguments.

## I. BACKGROUND

{¶ 3} Ashland Global Holdings, Inc., and Ashland, L.L.C. (collectively, "Ashland") leased 24 properties from SuperAsh Remainderman Limited Partnership ("SuperAsh") under 24 separate leases that commenced in 2010. Speedway, L.L.C. ("Speedway") subleases the properties from Ashland. The initial term for each lease was five years.

{¶ 4} The leases contained renewal options that gave Ashland the opportunity to renew the leases multiple times following the expiration of the initial five-year term: first, for a five-year renewal term and then for two successive one-year renewal terms. To exercise the options, Ashland was required to submit a written notice of intent to renew 120 days before the expiration of the leases. If Ashland did not exercise its option to renew the leases, any improvements made to the properties would vest in SuperAsh.[1] Significantly, Speedway has invested more than $10 million in constructing capital improvements on the properties.

{¶ 5} Ashland successfully renewed the leases twice. The first renewal was in 2015, when Ashland submitted written notice to SuperAsh of its intent to renew the leases for the five-year renewal term expiring on December 31, 2020. The second renewal was in 2020 for a one-year term expiring on December 31, 2021. But this second renewal was delayed.

{¶ 6} Ashland's deadline to submit the second notice of renewal to SuperAsh was September 3, 2020. However, Ashland did not notify SuperAsh of its intent to renew until November. One of Ashland's attorneys, William Wallach, sent a draft notice of renewal to Ashland's vice president, William Whitaker, on November 20, 2020. Wallach instructed Whitaker to sign the notice and then send a copy of the signed notice to SuperAsh by email and Federal Express. On November 23, Whitaker complied with Wallach's instructions and sent the notice to SuperAsh. Wallach also contacted Whitaker again to confirm that the notice of renewal was sent to SuperAsh. Despite the untimeliness, SuperAsh accepted the notice of renewal, and the leases were extended for a one-year term ending in December 2021.

{¶ 7} The next year—2021—Ashland attempted to renew the leases for a third time. This attempt was unsuccessful. The renewal notice was due to

---

1. The leases also included an option to purchase the properties that, if exercised, would prevent the improvements from vesting in SuperAsh. The option to purchase is immaterial to this appeal.

SuperAsh on September 3, 2021. Like the previous year, Wallach sent a draft renewal notice to Whitaker for his signature—this time, before the deadline. But unlike the previous year, Wallach did not instruct Whitaker to send the signed notice to SuperAsh. On August 11, 2021, Whitaker returned a signed copy of the notice of renewal to Wallach. Although on August 12, Wallach sent a copy of the signed notice of renewal to a nonparty, Valvoline, there is no record that either Wallach or Whitaker submitted the renewal notice to SuperAsh by September 3, 2021.

{¶ 8} In November 2021, SuperAsh notified Ashland that the leases would expire on December 31, because Ashland had failed to exercise its renewal option. The parties attempted to negotiate new lease agreements and entered into four tolling agreements from December 2021 through March 2022 to "preserve the status quo." The fourth tolling agreement expired on April 15, 2022, without successful negotiation of new leases.

{¶ 9} When the negotiation of new leases failed, Ashland filed a complaint seeking a declaration that the exercise of its renewal option was effective and seeking specific performance of the leases. SuperAsh filed a counterclaim for, among other things, forcible entry and detainer, and breach of the leases. The trial court granted judgment in Ashland's favor, grounding its decision in equity. The trial court explained that equity could forgive an unintended error under a lease and that Ashland's failure to submit the renewal notice was an inadvertent, honest mistake. Additionally, the trial court noted that strict enforcement of the deadline to exercise the option would result in forfeiture of improvements that cost millions of dollars. Thus, the court concluded that SuperAsh was prohibited from terminating the leases.

{¶ 10} After finding that equity could relieve an inadvertent mistake and prevent a forfeiture, the trial court determined that equitable estoppel was an additional basis for preventing termination of the leases. Specifically, the trial court

4

found that SuperAsh had knowingly accepted rent from Ashland for a two-week period after the termination of the fourth tolling agreement. SuperAsh's knowing acceptance of rent without a tolling agreement in place estopped SuperAsh from arguing that the leases had terminated, according to the trial court.

{¶ 11} SuperAsh appealed to the Tenth District, raising two assignments of error. In its first assignment of error, SuperAsh challenged the trial court's use of equitable relief to find that the late renewal of the leases was effective, arguing that the trial court erred in its honest-mistake and estoppel analyses.[2] The Tenth District affirmed the trial court's judgment. A cornerstone of the Tenth District's decision is its endorsement of the Sixth District Court of Appeals' holding in *Ward v. Washington Distribs., Inc.*, 67 Ohio App.2d 49 (6th Dist. 1980). The Sixth District in *Ward* stated:

> Equity will relieve a lessee from the consequences of a failure to give notice at the time, or in the form and manner, required as a condition precedent to the renewal of a lease, where such failure results from accident, fraud, surprise or honest mistake, and has not prejudiced the lessor.
>
> . . .
>
> Even when there is an absence of an honest mistake by the lessee in failing to timely renew the lease, where the lessee has made valuable improvements to the leased premises, the lessee should not be denied equitable relief from his own neglect or inadvertence if a forfeiture of such improvements would result—provided, there is no prejudice to the landlord.

---

2. SuperAsh's second assignment of error related to an order that had compelled SuperAsh to produce materials prepared in anticipation of litigation. However, that assignment of error is not at issue in this appeal.

*Id.* at paragraphs one and four of the syllabus; *see also* 2023-Ohio-3556 at ¶ 35 (10th Dist.), quoting *Ward* at 53.

{¶ 12} Previously, in *Capuano v. Epic Properties*, 1994 WL 505127 (10th Dist. Sept. 15, 1994), the Tenth District had "adopted and applied the equitable principles announced in *Ward*." 2023-Ohio-3556 at ¶ 40. SuperAsh urged the Tenth District to disavow *Ward* and instead follow the lead of the Second District Court of Appeals in *Fifth Third Bank W. Ohio v. Carroll Bldg. Co.*, 2009-Ohio-57 (2d Dist.), in which that court concluded that the equitable principles announced in *Ward* are "irreconcilable 'with the [Ohio Supreme Court's] holdings that unambiguous contractual language must be enforced as written, even when it will work a hardship on one party . . . and an advantage to another.'" 2023-Ohio-3556 at ¶ 39-40, quoting *Carroll Bldg. Co.* at ¶ 16. But the Tenth District adhered to *Ward*, observing that *Ward* has been adopted by many Ohio appellate courts. *Id.* at ¶ 40.

{¶ 13} Applying the equitable principles from *Ward* to the facts of this dispute, the Tenth District determined that the trial court did not abuse its discretion when it found that Ashland would suffer forfeiture if the leases were terminated or when it found that Ashland's failure to send the signed renewal notice to SuperAsh was an honest mistake. *Id.* at ¶ 48-49. Thus, the Tenth District decided that the trial court did not abuse its discretion by granting equitable relief to Ashland. *Id.* at ¶ 47. The Tenth District determined that it need not reach SuperAsh's argument challenging the trial court's application of equitable estoppel, because application of the honest-mistake doctrine resolved the appeal.

**{¶ 14}** The Tenth District certified a conflict between its judgment and the Second District's judgment in *Carroll Bldg. Co.* We recognized the conflict[3] and also accepted SuperAsh's appeal on the following proposition of law:

> A court may not equitably renew a written lease in contradiction to the express, unambiguous renewal conditions of the lease.

*See* 2024-Ohio-202.

## II. ANALYSIS

### A. *Equity may be used to renew a lease in cases when traditional grounds for equitable relief are present*

**{¶ 15}** The question before us is whether Ashland's untimeliness is a complete bar to renewal of the leases. Strict compliance with time limits is typically not required for contracts; the general rule is that "time is not of the essence of a contract." (Emphasis deleted.) *Longworth v. Mitchell*, 26 Ohio St. 334, 342 (1875). But the general rule does not hold true when it comes to offers: for offers, time *is* of the essence. *See id.* An option is an agreement to leave an offer open for a set time, *Gehret v. Rismiller*, 2007-Ohio-1893, ¶ 13 (2d Dist.), and so time constraints in an option are "equivalent to the withdrawal of the offer at the end of the time named," *Mitchell* at 342. Consequently, "[i]f a time limit is given for exercising an option, the option may not be exercised after that time has passed." *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 380 (1993); *accord* 1 Lord, *A Treatise on the Law of Contracts* § 5:20, 885 (4th Ed. 2022) ("Nothing less than an unconditional and precise acceptance [of an option contract] will suffice unless the

---

3. The certified-conflict question recognized here is similar to SuperAsh's proposition of law: "May a court apply the equitable principles announced in *Ward v. Washington Distribs., Inc.*, 67 Ohio App.2d 49 (6th Dist. 1980), to relieve a tenant from their failure to submit a notice to renew a lease at the time required by the lease agreement?" *See* 2024-Ohio-202.

optionor waives one or more of the terms of the option.").[4] Because Ashland did not exercise its option to renew within the time limit provided by the leases, Ashland is not entitled to renew the leases unless equity is available to excuse such untimeliness.

{¶ 16} This court has recognized that equitable remedies may be used in contractual disputes to relieve a party from the consequences of mistake or wrongful conduct such as fraud or duress. *See Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 48 (a release may be avoided when "fraud, duress, or other wrongful conduct" is present); *Witherow v. Witherow*, 16 Ohio 238, 242-243 (1847) (recognizing fraud, accident, and mistake as grounds for equitable relief in a contractual dispute). And courts from other jurisdictions have generally allowed the use of equity in disputes concerning options to renew leases so long as one of the traditional grounds for equity is present. *See, e.g.*, *SDG Macerich Properties, L.P. v. Stanek, Inc.*, 648 N.W.2d 581 (Iowa 2002) (noting that the "majority of state high courts . . . allow equitable relief only in cases of fraud, misrepresentation, undue influence, mistake, waiver, and duress"); *Utah Coal & Lumber Restaurant, Inc. v. Outdoor Endeavors Unlimited*, 40 P.3d 581, 584, 585 (Utah 2001) (explaining that equity may excuse a lessee's failure to timely renew a lease because of "fraud, misrepresentation, duress, undue influence, mistake, or the lessor's waiver of its right to receive notice").

{¶ 17} Here, the parties agree that courts may sometimes apply equitable principles in settling contractual disputes, but they disagree about when courts may do so. SuperAsh's position is that equity cannot be used to alleviate a lessee's

---

4. Requiring strict compliance with an option's time limit is not unique to Ohio. Courts across the country have recognized that time is of the essence in option contracts. *See, e.g.*, *Brent Liquid Transport, Inc. v. GATX Leasing Corp.*, 650 F.Supp. 467, 471 (N.D.Miss. 1986) (observing that the majority of courts, including those in California and Mississippi, have held "that the time for giving notice of intent to exercise the option [in a lease] is of the essence"); *Andrews v. Blake*, 69 P.3d 7, ¶ 24 (Ariz. 2003) ("Arizona courts have strictly construed options in lease agreements").

failure to comply with agreed-upon terms in a contract. In SuperAsh's view, the intervention of equity in a contractual dispute is limited to those times when a mistake, fraud, or duress prevented a meeting of the minds such that the contract does not reflect the intent of the parties. An inadvertent failure to comply with the renewal deadline is different than a mistake preventing a meeting of the minds and does not warrant the application of equitable principles to renew the lease, SuperAsh argues.

{¶ 18} Ashland and Speedway, on the other hand, argue for a broader application of equitable relief to alleviate the consequences of Ashland's failure to strictly comply with the requirements of the options. Ashland urges this court to follow *Ward* and its progeny and allow equitable relief when a lessee fails to strictly comply with an option's requirements due to an "honest mistake" or the lessee's own negligence when forfeiture would result. For its part, Speedway agrees that equity can be invoked when an "honest mistake" has occurred. However, Speedway maintains that any discussion of negligence would be advisory because the Tenth District based its decision on the "honest mistake" doctrine, not negligence. Notably, the "honest mistake" doctrine championed by Ashland and Speedway is much broader than SuperAsh's conception of mistake: it encompasses a failure to meet the deadline because of a reasonable mistaken belief about when the renewal deadline is and a failure to meet the deadline despite reasonable attempts to do so. As we will discuss, the Tenth District's understanding of an "honest mistake" is more akin to negligence than to the equitable defense of mistake.

{¶ 19} The proper place for equitable relief in contractual disputes lies somewhere between SuperAsh's proposition and the position advocated by Ashland and Speedway. SuperAsh proposes a bright-line rule, but there is no basis for categorically rejecting the use of equity in contractual disputes to allow the renewal of a lease in all circumstances. On the other hand, Ashland and Speedway

go too far by suggesting that negligence masquerading as an "honest mistake" merits equitable relief. As we will explain, equitable defenses are sometimes applicable in contractual disputes but not to alleviate the consequences of negligence.

### B. Negligence is not a basis for equitable relief

{¶ 20} Traditional grounds for equitable intervention include such things as fraud, mistake, or accident.[5] *Edwards v. Morris*, 1 Ohio 524, 531 (1824). Ashland and Speedway argue that mistake applies to this case.

{¶ 21} "Equity from its inception has had jurisdiction to concern itself with mistakes." *Sloan v. Std. Oil Co.*, 177 Ohio St. 149, 151 (1964). But not all mistakes are the type that justify equitable relief. In the context of equity, "mistake" refers to a misapprehension of something (typically a fact) underpinning a contract. *See id.* at 151-152 ("The equitable remedy of cancellation or rescission of contracts . . . has long been available as a method of granting relief from the consequences of any mistake of fact which is a material element of the transaction."); *Irwin v. Wilson*, 45 Ohio St. 426, 437-438 (1887) (explaining that equitable relief may be granted when a contract was founded on a mutual mistake of fact by the parties). In other words, a mistake is a misunderstanding "regarding a basic assumption on which the contract was made that frustrates the intent of the parties." *Marchbanks v. Ice House Ventures, L.L.C.*, 2023-Ohio-1866, ¶ 15; *accord* McClintock, *Handbook of the Principles of Equity*, § 88, 237 (2d Ed. 1948) ("The term 'mistake' in its legal significance" is a "a mental concept which is not in accord with the facts, . . . and which has induced the party entertaining the concept to enter into a legal transaction").

{¶ 22} Ashland argues that "mistake" encompasses reasonable mistakes about when the renewal deadline is or a failure to meet the deadline despite

---

5. This is not an exhaustive list of traditional grounds for equitable relief, and we do not foreclose the possibility that other grounds not listed here might justify equitable relief in another case.

reasonable attempts to do so, a position that is consistent with *Ward*. *See Ward*, 67 Ohio App.2d at 51-52, 56 (finding that a lessee who misread the lease and was thus mistaken about the deadline for its renewal notice made an honest mistake and granting equitable relief). But this conflates mistake with negligence, which is outside the scope of mistake.[6] *See Witherow*, 16 Ohio at 241-242 (distinguishing between the traditional grounds for equity—fraud, accident, or mistake—and negligence); *Dorflinger v. Coil*, 2 Ohio 311, 312 (1826) (same).

{¶ 23} Unlike mistake, negligence is "the failure to exercise ordinary care." *Universal Concrete Pipe Co. v. Bassett*, 130 Ohio St. 567, 571 (1936). If the means to correct a misunderstanding are at a person's disposal, then failing to investigate is a failure to exercise ordinary care that constitutes negligence—not mistake. *See Crist v. Dice*, 18 Ohio St. 536, 541-542 (1869) (finding that the plaintiff's supposed mistake was the result of his own negligence because he did not take advantage of the information available to him); *Byers v. Chapin*, 28 Ohio St. 300, 304 (1876) (equity only available if the defendant did not lack diligence in failing to discover mistake). And it is well-settled that a party's own negligence is not a basis for equitable relief. *Stevens v. Natl. City Bank*, 45 Ohio St.3d 276, 285 (1989). "'Courts of equity give relief to the vigilant, not to the negligent.'" *Crist* at 542, quoting 1 Story, *Commentaries on Equity Jurisprudence*, § 146 and notes.

{¶ 24} Even though equity will not relieve the negligent, some courts—including the Sixth District in *Ward* and the Tenth District in this case—have used equity to relieve a forfeiture that was occasioned by the party's own negligence. *See, e.g.*, *Ward* at 54; 2023-Ohio-3556 at ¶ 48 (10th Dist.). But forfeiture is not an exception to Ohio's rule that equity does not excuse negligence. This court has

---

6. We note that "negligence" is being used in a colloquial sense here, rather than in the strict legal sense of the tort of negligence. Breaching the terms of a contract is not, by itself, an actionable tort, *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983), although a breach may be the result of neglectful conduct.

historically refrained from using equity in such circumstances even when one party would suffer a hardship. *See Crist* at 542, quoting 1 Story, *Commentaries on Equity Jurisprudence*, § 146 and notes (equity will not "'aid . . . those who by their own negligence, and by that alone, have incurred a loss'"); *Dorflinger*, 2 Ohio at 312 ("The bill makes no case of either surprise or mistake, but only a case of negligence. . . . However great the hardship, a court of equity never relieves in a case of this character.").[7]

**{¶ 25}** Moreover, it is well-settled in Ohio that contract disputes "should not be decided on the basis of what is 'just' or equitable." *Ervin v. Garner*, 25 Ohio St.2d 231, 239 (1971). "'[U]nless there is fraud or other unlawfulness involved, courts are powerless to save a competent person from the effects of his own voluntary agreement.'" *Dugan & Meyers Constr. Co., Inc. v. Ohio Dept. of Adm. Servs.*, 2007-Ohio-1687, ¶ 29, quoting *Ullmann v. May*, 147 Ohio St. 468, 476 (1947). Just as "[i]t is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result," *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 1997-Ohio-202, ¶ 39, it is not this court's function to rewrite the rules of equity to excuse a party's failure to comply with the terms of its own agreement on the basis of forfeiture.

**{¶ 26}** We thus conclude that Ohio law permits equity to intervene when a party has failed to strictly comply with the requirements for exercising an option to renew a lease, but only when traditional grounds such as fraud, accident, or mistake apply. And "mistake" means a misapprehension of the terms of the contract at the

---

7. Significantly, Ashland and Speedway do not cite on-point case law from this court that would support using equity to prevent a forfeiture. Ashland cites *Ensel v. Lumber Ins. Co. of New York*, 88 Ohio St. 269 (1913), but that case does not help Ashland because it merely held that an insurance-policy provision working a forfeiture should be strictly construed against the insurer. *Id.* at 281. And although the Sixth District endorsed this position in *Ward*, it mustered almost no supporting case law from Ohio. *See Ward*, 67 Ohio App.2d at 54 (collecting cases). The one Ohio case that *Ward* did cite primarily considered whether a municipal court had jurisdiction over equitable defenses. *See id.*, citing *Barr Hotel Co. v. Lloyd MacKeown Buick Co.*, 104 Ohio App. 69, 73-74 (3d Dist. 1957).

time of contract formation, not negligence or other mistaken beliefs that arise after the parties have entered into the contract. The potential for forfeiture does not enter the analysis.

### C. Ashland's failure to timely renew the leases was the result of negligence, not mistake

{¶ 27} Keeping in mind the distinction between mistake and negligence, we hold that the Tenth District erred when it affirmed the trial court's judgment equitably preventing SuperAsh from terminating the leases. *See* 2023-Ohio-3556 at ¶ 34-37 (10th Dist.). The trial court's factual findings do not support its conclusion that Ashland failed to exercise its option to renew according to the terms of the leases because of an honest mistake. The trial court found that Ashland's attorney prepared a notice of renewal of the leases and sent it to an authorized officer of Ashland, who signed and returned the notice to Ashland's attorney without also forwarding it to SuperAsh. The trial court also found that Ashland's attorney shared the signed notice of renewal with an attorney for a nonparty and advised that the notice had already been sent to SuperAsh. Based on these findings, the trial court concluded that Ashland's failure to deliver the prepared and signed notice to SuperAsh was based on either inadvertence or honest mistake.

{¶ 28} What happened here bears no resemblance to mistake. Ashland did not have a mistaken belief about a fundamental assumption underlying the leases, or even about what the leases required for exercising the renewal option. Rather, Ashland's purported mistake was a misapprehension of its own conduct: whether it had complied with the leases. Moreover, Ashland had the ability to prevent or correct its misapprehension before the deadline to renew the leases expired. Its own agents—Wallach and Whitaker—failed to communicate clearly about who would complete a consequential legal obligation: sending the notice of renewal to SuperAsh. A simple email or phone call could have dispelled the misapprehension or prevented it in the first place. But none of Ashland's agents bothered to confirm

whether the notice was sent to SuperAsh—in contrast to Wallach's and Whitaker's efforts to renew the leases in 2020. Thus, the misapprehension was about something that Ashland "ought to have known or could by reasonable diligence have found out," *Chapin*, 28 Ohio St. at 304. This was negligence, not mistake.

{¶ 29} The circumstances leading to Ashland's failure to deliver the notice of renewal of the leases to SuperAsh do not satisfy Ohio's requirements for equitable relief. The trial court's observation that Ashland would forfeit the capital improvements if the leases were permitted to terminate does not change the result, given our determination that forfeiture by itself is not a basis for equitable relief. Thus, we disagree with the Tenth District and find that the trial court abused its discretion when it issued a declaratory judgment equitably renewing the leases.

{¶ 30} We recognize that denying equitable relief is a harsh result for Ashland and Speedway. Nevertheless, it is not the place of this court to set aside the negotiated terms of a contract because the consequences of that agreement will cause hardship. *See Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 54-55 (1989) (refusing to find ambiguity in a contract just because the terms as written "may work a hardship upon one of the parties").

### D. Prospective-only application of this decision is not warranted

{¶ 31} Ashland and Speedway alternatively argue that if this court rejects *Ward*, our decision should be applied only prospectively because it upsets the settled law that was in place at the time that the parties entered into the lease agreements. We disagree.

{¶ 32} "[T]he general rule in Ohio is that a decision will be applied retroactively unless retroactive application interferes with contract rights or vested rights under the prior law." *DiCenzo v. A-Best Prods. Co., Inc.*, 2008-Ohio-5327, ¶ 14. Nevertheless, this court has discretion to apply its decision only prospectively. *Id.* Three considerations guide the determination whether to apply a decision only prospectively: "(1) whether the decision establishes a new principle

of law that was not foreshadowed in prior decisions; (2) whether retroactive application of the decision promotes or [hinders] the purpose behind the rule defined in the decision; and (3) whether retroactive application of the decision causes an inequitable result." *Id.* at ¶ 25, citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-107 (1971).

{¶ 33} A prospective-only application of this decision is not warranted. Here, the first consideration is conclusive. Today's decision was foreshadowed by this court's long-standing precedent concerning equity, mistake, and contract disputes. We are not overruling another decision from this court, and decisions from several lower courts of appeals cannot accurately be described as settled law. Thus, this decision applies retroactively.

### E. Constitutional-avoidance considerations prevent us from reaching SuperAsh's constitutional argument

{¶ 34} SuperAsh also asserts that the intervention of equity in this contract dispute would violate the Ohio Constitution's contract clause. Under constitutional-avoidance considerations, "we should not be deciding constitutional questions unless it is necessary to do so." *Epcon Communities Franchising, L.L.C. v. Wilcox Dev. Group, L.L.C.*, 2024-Ohio-4989, ¶ 19. Because we find that equitable relief was unwarranted, we do not reach SuperAsh's constitutional argument.

### III. CONCLUSION

{¶ 35} It is well established in Ohio that "'it is not the province of courts to relieve parties of improvident contracts.'" *Dugan & Meyers Constr. Co.*, 2007-Ohio-1687, at ¶ 29, quoting *Ohio Crane Co. v. Hicks*, 110 Ohio St. 168, 172 (1924). For that reason, equity will not be available to excuse a lessee's failure to strictly comply with a renewal option in a lease unless one of the traditional grounds for equitable relief in a contractual dispute—such as fraud, accident, or mistake—is present. "Mistake" does not, however, include negligence, so a negligent failure to

exercise a renewal option does not warrant equitable relief. We therefore answer the certified-conflict question in the negative: the equitable principles that were announced in *Ward* should not be applied by Ohio courts to the extent that they are contrary to our holding.

{¶ 36} Because Ashland's failure to timely submit its renewal notice was negligent, it was not a mistake. The trial court should not have granted equitable relief to Ashland. We therefore reverse the judgment of the Tenth District Court of Appeals and remand the case to that court for consideration of SuperAsh's argument challenging the trial court's application of equitable estoppel.

Judgment reversed
and cause remanded.

_____

Arnold & Clifford, L.L.P., James E. Arnold, Michael L. Dillard Jr., Gerhardt A. Gosnell II, and Tiffany Carwile, for appellees Ashland Global Holdings, Inc., and Ashland, L.L.C.

Roetzel & Andress, L.P.A., Jeremy S. Young, and Stephen D. Jones, for appellee Speedway, L.L.C.

Collins Roche Utley & Garner, L.L.C., and Richard M. Garner, for appellant.

Ashbrook Byrne Kresge, L.L.C., Benjamin M. Flowers, and James S. Kresge, urging reversal for amicus curiae Networks USA I, L.L.C.

David C. Tryon and Alex M. Certo, urging reversal for amicus curiae The Buckeye Institute.

_____