[Cite as *Ashland Global Holdings, Inc. v. SuperAsh Remainderman Ltd. Partnership*, 2026-Ohio-1057.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ashland Global Holdings, Inc., et al., | : | |
| Plaintiffs-Appellees, | : | |
| Speedway, LLC, | : | |
| | | No. 22AP-638 |
| Intervenor-Appellee, | : | (C.P.C. No. 22CV-2398) |
| v. | : | (REGULAR CALENDAR) |
| SuperAsh Remainderman Limited Partnership, | : | |
| | : | |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on March 26, 2026

**On brief:** *Arnold & Clifford, LLP, James E. Arnold, Gerhardt A. Gosnell, II*, and *Michael L. Dillard, Jr.*, for appellees Ashland Global Holdings, Inc. and Ashland LLC. **Argued:** *Michael L. Dillard, Jr.*

**On brief:** *Roetzel & Andress, LPA, Jeremy S. Young*, and *Stephen D. Jones*, for appellee Speedway, LLC.

**On brief:** *Collins Roche Utley & Garner LLC*, and *Richard M. Garner*, for appellant. **Argued:** *Richard M. Garner.*

APPEAL from the Franklin County Court of Common Pleas
ON REMAND from the Supreme Court of Ohio

DORRIAN, J.

{¶ 1} The present matter is before this court on remand from the Supreme Court of Ohio's decision in *Ashland Global Holdings, Inc. v. SuperAsh Remainderman, Ltd. Partnership*, 2025-Ohio-2835 ("*Ashland II*"), which reversed this court's decision in

*Ashland Global Holdings, Inc. v. SuperAsh Remainderman, Ltd. Partnership*, 2023-Ohio-3556 (10th Dist.) ("*Ashland I*"). After reviewing the record and the parties' original and supplemental briefs, we reverse the judgment of the Franklin County Court of Common Pleas and remand the matter to that court for further proceedings.

## I. Facts and Procedural History

{¶ 2}    The factual background and procedural history of this case were adequately stated in both *Ashland I* and *Ashland II*. In our current discussion, we will address the facts and procedural history most relevant to the issue presently before us.

{¶ 3}    The dispute in the present case concerns 24 different properties located throughout 5 different states. Eight of the properties are in Ohio. Defendant-appellant, SuperAsh Remainderman Limited Partnership ("SuperAsh"), leased the properties to plaintiffs-appellees, Ashland Global Holdings, Inc. and Ashland, LLC (collectively, "Ashland"), pursuant to 24 separate leases. Ashland subleased the properties to intervenor-appellee, Speedway LLC ("Speedway"). Speedway operated retail fuel and convenience stores on the properties.

{¶ 4}    The leases between SuperAsh and Ashland commenced in 2010, and the initial term for each lease was five years. Following the expiration of the initial five-year term, the leases contained options to renew for an initial five-year term and two successive one-year terms. To exercise the renewal options, Ashland had to provide SuperAsh with written notice of its intent to renew on or before the date which was 120 days prior to the expiration of the leases. If the leases expired, the improvements on the properties would "automatically vest" in SuperAsh. (Compl., Ex. A, Ground Lease § 15.3.)

{¶ 5}    In 2015, Ashland successfully renewed the leases for the initial five-year renewal term. Although Ashland failed to timely submit the renewal notice for the first one-year renewal term beginning on January 1, 2021, SuperAsh accepted the late renewal notice without objection. The second one-year renewal term was for the year beginning on January 1, 2022 (the "2022 term"). To renew the leases for the 2022 term, Ashland had to submit a renewal notice to SuperAsh on or before September 3, 2021. On August 11, 2021, Ashland's attorney sent a draft renewal notice to Ashland's vice president and treasurer, William Whitaker, and instructed Whitaker to return a signed copy of the renewal notice to him. Whitaker followed the attorney's instruction and returned a signed copy of the 2022

renewal notice to the attorney on August 11, 2021. On August 12, 2021, Ashland's attorney sent a copy of the signed renewal notice to Valvoline, a nonparty to the present suit, and informed Valvoline Ashland had sent the 2022 renewal notice to SuperAsh.[1] However, Ashland had not sent the 2022 renewal notice to SuperAsh. On November 3, 2021, SuperAsh notified Ashland the leases would expire on December 31, 2021, because Ashland failed to exercise the renewal option for the 2022 term.

{¶ 6} From December 2021 through March 2022, the parties executed a series of four tolling agreements to "preserve the status quo" under the leases while the parties attempted to negotiate new lease agreements. (Tr. Vol. I at 57; Joint Ex. 12 "First Tolling Agreement"; Joint Ex. 13 "Second Tolling Agreement"; Joint Ex. 15 "Third Tolling Agreement"; and Joint Ex. 16 "Fourth Tolling Agreement.") Pursuant to the tolling agreements, Ashland paid SuperAsh $250,000 per month in rent for January, February, March, and April 2022, as well as a tolling fee of 8 percent of each month's rent. Although the fourth tolling agreement obligated Ashland to pay SuperAsh "$250,000 in rent for April," the agreement also "terminate[d] on April 15, 2022."[2] (Fourth Tolling Agreement at ¶ 3, 4.) The fourth tolling agreement expired on April 15, 2022, without successful negotiation of new leases.

{¶ 7} On April 12, 2022, Ashland filed a complaint asserting claims for declaratory relief and specific performance of the leases. Ashland asked the trial court to declare that it had effectively exercised the option to renew the leases for the 2022 term. SuperAsh filed a counterclaim asserting claims for forcible entry and detainer ("FE&D"), breach of the leases, and declaratory relief. The trial court allowed Speedway to intervene in the action and participate as a plaintiff; Speedway sought the same declaratory judgment as Ashland.

---

[1] In 2017, Ashland executed a "side-letter agreement" with Valvoline that conveyed the rights and obligations associated with the leases at issue in the present case to Valvoline. (Tr. Vol. I at 41.) Ashland and Valvoline disputed the extent of the conveyance, including a dispute regarding which party was responsible for sending the renewal notices to SuperAsh. The dispute resulted in litigation between Ashland and Valvoline.

[2] The tolling agreements also provided that, if the parties reached a new lease agreement, the rent Ashland paid under the tolling agreements, but not the tolling fee, would be applied to the rent due under the new lease agreement. (Second, Third, & Fourth Tolling Agreements at ¶ 4.) Whitaker explained the "key element" for Ashland "on the rental term" was that "paying that rent, the 250 per month, that was going to be applied to anything once we [came] to an agreement thereafter." (Whitaker Dep. at 119.) When asked if Ashland agreed to pay $250,000 in rent for the period from April 1 to April 15, 2022 in the fourth tolling agreement, Whitaker stated the rent was not just "for that period," although that was "one element of it," because "any fees paid for this would be applied to any amounts due under the new [lease] agreement." (Whitaker Dep. at 122.)

On August 12, 2022, the court "bifurcated the declaratory judgment requests of all the parties" from SuperAsh's claim for FE&D.  (Aug. 12, 2022 Journal Entry at 4.)  The court stated it would hear the parties' declaratory judgment claims first.

{¶ 8}   The parties submitted pre-trial briefs to the trial court addressing the pertinent issues for trial.  Whitaker; SuperAsh's general partner, Jay Woldenberg; and SuperAsh's external real estate advisor, B.J. Feller, testified at the three-day trial commencing September 19, 2022.

{¶ 9}   On September 27, 2022, the trial court issued a declaratory judgment and an opinion.  The court determined that "equity [could] come to the aid of someone making an innocent, unintended error under a lease."  (Sept. 27, 2022 Opinion at 12.)  The court concluded Ashland was entitled to equitable relief because Ashland intended to deliver the 2022 renewal notice to SuperAsh in August 2021, Ashland failed to provide SuperAsh with the 2022 renewal notice due to an "honest mistake," Ashland and Speedway would forfeit millions of dollars in valuable improvements on the properties if the leases terminated, and because SuperAsh would suffer no harm if the court granted equitable relief.  (Sept. 27, 2022 Opinion at 12.)  The court also found SuperAsh was estopped from claiming the leases terminated on December 31, 2021 because SuperAsh accepted rent from Ashland for the last two weeks of April 2022 after the fourth tolling agreement expired.  As such, the court granted the plaintiffs' claims for declaratory judgment, granted Ashland's claim for specific performance of the leases, denied SuperAsh's claims for breach of the leases and declaratory judgment, and dismissed SuperAsh's claim for FE&D.

{¶ 10} SuperAsh appealed the trial court's decision to this court, asserting two assignments of error.  In *Ashland I*, we overruled both assignments of error and affirmed the judgment of the trial court.[3]

{¶ 11} In its first assignment of error, SuperAsh argued the trial court erred by invoking equity to allow Ashland to renew the leases for the 2022 term.  Relying on *Ward v. Washington Distribs. Inc.*, 67 Ohio App.2d 49 (6th Dist. 1980), *Capuano v. Epic Properties*, 1994 Ohio App. LEXIS 4071 (10th Dist. Sept. 15, 1994), and other cases, we observed that the "appellate courts of this state, including this court, have held that a court

---

[3] SuperAsh's second assignment of error concerned a discovery ruling and is not pertinent to our present analysis.

may grant a tenant equitable relief from the tenant's failure to submit a notice at the time, or in the form and manner, required as a condition precedent to the renewal of a lease." *Ashland I* at ¶ 34. In *Ward*, the court held that equity could forgive a lessee's failure to submit a timely renewal notice under a lease where "such failure result[ed] from accident, fraud, surprise or honest mistake," and/or where the lessee "made valuable improvements to the leased premises" and a "forfeiture of such improvements would result," so long as there was no prejudice to the landlord. *Ward* at paragraphs one and four of the syllabus. Because the record demonstrated SuperAsh would suffer no prejudice if the court granted Ashland equitable relief, Ashland and Speedway would forfeit millions of dollars in valuable improvements on the properties in the absence of equitable relief, and that Ashland's failure to timely submit the 2022 renewal notice resulted from an honest mistake, we found the trial court properly applied the principles announced in *Ward* to grant Ashland equitable relief. *Ashland I* at ¶ 41-55. Although SuperAsh also claimed the "trial court erred by finding equitable estoppel prevented SuperAsh from claiming the ground leases terminated on December 31, 2021," we declined to address SuperAsh's equitable estoppel argument. *Id.* at ¶ 60.

{¶ 12} SuperAsh moved to certify a conflict between our decision in *Ashland I* and the Second District Court of Appeals decision in *Fifth Third Bank W. Ohio v. Carroll Bldg. Co.*, 2009-Ohio-57 (2d Dist.). We granted SuperAsh's motion and certified the conflict. The Supreme Court of Ohio recognized the conflict and accepted SuperAsh's appeal on the following proposition of law: "A court may not equitably renew a written lease in contradiction to the express, unambiguous renewal conditions of the lease." *Ashland II* at ¶ 14.

{¶ 13} In *Ashland II* the Supreme Court of Ohio observed that, while "Ohio law permits equity to intervene when a party has failed to strictly comply with the requirements for exercising an option to renew a lease," equity may only intervene when traditional grounds for equitable relief are present, "such as fraud, accident, or mistake." *Id.* at ¶ 26. "Mistake," in this context refers to a "misapprehension of the terms of the contract at the time of contract formation, not negligence or other mistaken beliefs that arise after the parties have entered into the contract." *Id.* at ¶ 26. The court also observed that "forfeiture is not an exception to Ohio's rule that equity does not excuse negligence." *Id.* at ¶ 24. The

court concluded Ashland's failure to timely submit the 2022 renewal notice resulted from Whitaker's and Ashland's attorney's "fail[ure] to communicate clearly about who would complete a consequential legal obligation: sending the notice of renewal to SuperAsh." *Id.* at ¶ 28. As such, the court found Ashland's failure to timely renew the leases for the 2022 term resulted from negligence, rather than a mistake. *Id.* at ¶ 28. Therefore, the Supreme Court determined that Ashland was not entitled to equitable relief and reversed this court's judgment in *Ashland I*. The Supreme Court remanded the matter to this court "for consideration of SuperAsh's argument challenging the trial court's application of equitable estoppel." *Ashland II* at ¶ 36.

## II. Remaining Assignment of Error

{¶ 14} SuperAsh assigned the following as trial court error:

> The trial court committed reversible error by invoking equity to allow Appellees Ashland Global Holdings, Inc. and Ashland, LLC (unless otherwise noted, collectively "Ashland") to renew the leases with Appellant SuperAsh Remainderman Limited Partnership ("SuperAsh") in direct contravention of the express terms and requirements of the leases regarding exercise of the renewal options.

## III. Discussion

{¶ 15} The Supreme Court has remanded this case for this court to consider SuperAsh's equitable estoppel argument. However, our review of the record demonstrates the trial court applied the doctrine of waiver by estoppel, rather than equitable estoppel. We further find a lack of competent, credible evidence to support the trial court's application of waiver by estoppel to the present case.

{¶ 16} "Equitable estoppel prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34 (1994), citing *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Edn.*, 42 Ohio St.3d 86, 90 (1989). "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145 (1990). "A prima facie case of equitable estoppel requires proof of (1) a factual representation that, (2) is misleading, (3) induces actual reliance that is reasonable and in good faith, and (4) causes detriment to the relying

party." *Hudson v. Petrosurance, Inc.*, 2009-Ohio-4307, ¶ 38 (10th Dist.), citing *Ruch v. Ohio Dept. of Transp.*, 2004-Ohio-6714, ¶ 14 (10th Dist.). Equitable estoppel presents a mixed question of law and fact, and an appellate court reviews a trial court's application of the doctrine for an abuse of discretion. *Realty Income Corp. v. Garb-Ko, Inc.*, 2013-Ohio-4932, ¶ 26 (10th Dist.).

{¶ 17} "Waiver is a voluntary relinquishment of a known right and is generally applicable to all personal rights and privileges, whether contractual, statutory or constitutional." *Glidden Co. v. Lumbermens Mut. Cas. Co.*, 2006-Ohio-6553, ¶ 49. "Waiver assumes one has an opportunity to choose between either relinquishing or enforcing of the right. A waiver may be enforced by the person who had a duty to perform and who changed his or her position as a result of the waiver." *Chubb v. Ohio Bur. of Workers' Comp.*, 1998-Ohio-628, ¶ 16, citing *Andrews v. State Teachers Retirement Sys. Bd.*, 62 Ohio St.2d 202, 205 (1980). The party asserting waiver must prove it by establishing a clear, unequivocal, decisive act by the other party demonstrating the intent to waive. *Realty Income Corp.* at ¶ 17, citing *N. Olmsted v. Eliza Jennings, Inc.*, 91 Ohio App.3d 173, 180 (8th Dist. 1993).

{¶ 18} " '[W]aiver by estoppel' exists when the acts and conduct of a party are inconsistent with an intent to claim a right, and have been such as to mislead the other party to his prejudice and thereby estop the party having the right from insisting upon it." *Mark-It Place Foods, Inc. v. New Plan Excel Realty Trust, Inc.*, 2004-Ohio-411, ¶ 57 (4th Dist.). " 'Waiver by estoppel allows a party's inconsistent conduct, rather than a party's intent, to establish a waiver of rights.' " *EAC Properties, L.L.C. v. Brightwell*, 2011-Ohio-2373, ¶ 22 (10th Dist.), quoting *Lewis & Michael Moving & Storage, Inc. v. Stofcheck Ambulance Serv., Inc.*, 2006-Ohio-3810, ¶ 29 (10th Dist.). *Accord Baumgartner v. AIM Leasing*, 2013-Ohio-883, ¶ 26 (11th Dist.). Thus, under waiver by estoppel, "a party to a contract may waive the right to literal compliance with the terms of the contract by engaging in actions or a course of conduct inconsistent with literal compliance." *Daniel E. Terreri & Sons v. Bd. of Mahoning Cty. Commrs.*, 2003-Ohio-1227, ¶ 77 (7th Dist.), citing 13 Williston on Contracts (4 Ed.2000) at 628, Section 39:29. *See also Am. Business Invests., L.L.C. v. Shaeena & Allos, L.L.C.*, 2023-Ohio-739, ¶ 41, 44 (6th Dist.) (Mayle, J., dissenting) (noting equitable estoppel and waiver by estoppel are "two concepts [that] are so closely

related that courts—including this court—have confused them on occasion," but that waiver by estoppel "is distinct from" equitable estoppel).

{¶ 19} In Ashland and Speedway's combined trial brief, the plaintiffs claimed SuperAsh's "[c]onduct amount[ed] to a 'waiver by estoppel.' " (Pls.' Trial Brief at 18.) The plaintiffs alleged that, because the fourth tolling agreement "expired on April 15, 2022," but the agreement stated the "rent paid was for all of April," SuperAsh "accepted rent for a time period after the termination of the Tolling Agreements." (Pls.' Trial Brief at 20.) As such, the plaintiffs asked the trial court to find that SuperAsh "waived any objection to the allegedly late renewal notice for 2022 and [was] estopped from denying the effectiveness of Ashland's 2022 renewal." (Pls.' Trial Brief at 20-21.) In its trial brief, SuperAsh claimed the plaintiffs could not establish waiver by estoppel. (Def.'s Trial Brief at 31.)

{¶ 20} The trial court determined that, because Ashland paid SuperAsh $250,000 in rent "for April" but the fourth tolling agreement only extended the leases for the first two weeks of April, "SuperAsh accepted $125,000 in extra 'rent' paid by Ashland covering two weeks after the extension expired on April 15, 2022." (Sept. 27, 2022 Opinion at 17.) Based on this determination, the court issued a declaratory judgment stating SuperAsh was "estopped from claiming that the . . . Leases terminated on December 31, 2021 because Ashland paid, and SuperAsh accepted, significant rent for a two-week time period in April 2022 beyond the termination date of the fourth Tolling Agreement." (Sept. 27, 2022 Declaratory Jgmt. at ¶ 4.) The court held that by "knowingly accepting such rent beyond the amount due under the Tolling Agreement, SuperAsh lost the right to claim lease termination had occurred in 2021 due to late notice." (Declaratory Jgmt. at ¶ 4.)

{¶ 21} Thus, the record demonstrates the trial court agreed with the plaintiffs' trial brief argument regarding waiver by estoppel. Indeed, the court found that by accepting the rent from Ashland, SuperAsh "lost," i.e. waived, its right to claim the leases expired and that SuperAsh was "estopped" from claiming the leases terminated on December 31, 2021. (Declaratory Jgmt. at ¶ 4.) Notably, the trial court never addressed the elements of equitable estoppel and never found that SuperAsh made a factual misrepresentation that Ashland relied upon to its detriment. The trial court never used the term "equitable estoppel" in either its opinion or its judgment entry.

{¶ 22} Despite the trial court's findings, in its appellate brief to this court SuperAsh claimed the "trial court's reliance on equitable estoppel [was] in error." (SuperAsh's Appellate Brief at 42.) SuperAsh argued the plaintiffs failed to establish the elements of equitable estoppel.[4] (SuperAsh's Appellate Brief at 39-40.) Ashland and Speedway responded to SuperAsh's equitable estoppel argument in their appellee briefs. (Ashland's Appellate Brief at 47; Speedway's Appellate Brief at 41.) In *Ashland I* and *Ashland II*, this court and the Supreme Court both repeated SuperAsh's erroneous equitable estoppel argument. *See Ashland I* at ¶ 60; *Ashland II* at ¶ 13.

{¶ 23} We now clarify that the trial court never relied on the doctrine of equitable estoppel as a basis for granting Ashland equitable relief. Rather, the court found SuperAsh was estopped from claiming the leases terminated on December 31, 2021 based on the doctrine of waiver by estoppel. Having clarified the legal issue before us, we now address whether the trial court erred in its application of waiver by estoppel.

{¶ 24} Whether a party's inconsistent conduct amounts to a waiver by estoppel "involves a factual determination within the province of the trier of fact." *EAC Properties*, 2011-Ohio-2373, at ¶ 23 (10th Dist.), citing *Lewis & Michael Moving & Storage, Inc.*, 2006-Ohio-3810, at ¶ 30 (10th Dist.). "Review of a trial court's factual determinations involves some degree of deference, and we will not disturb a trial court's findings of fact where the record contains competent, credible evidence to support such findings." *Id.*, citing *Wiltberger v. Davis*, 110 Ohio App.3d 46, 52 (10th Dist. 1996). *See Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "In contrast to determinations of fact, which are accorded considerable deference, questions of law are reviewed de novo." *Complete Gen. Constr. Co. v. Kard Welding, Inc.*, 2009-Ohio-1861, ¶ 14 (10th Dist.), citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 1995-Ohio-214, ¶ 8.

{¶ 25} In general, the "failure of a lessor to object in a timely manner to a breach of a lease agreement constitutes a waiver, estopping the lessor from setting up the breach as a basis for terminating the lease." *Colaprete v. Morris*, 2013-Ohio-3899, ¶ 44 (5th Dist.),

---

[4] SuperAsh also argued the plaintiffs "waived" equitable estoppel because they did not "ple[a]d" it. (SuperAsh's Appellate Brief at 39.) However, in its answer to SuperAsh's counterclaim, Ashland raised both the "doctrine of waiver" and the "doctrine of estoppel" as affirmative defenses. (Answer to Countercl. at ¶ 52-53.) In its amended complaint, Speedway claimed SuperAsh was "estopped from denying the validity of Ashland's Lease renewal for 2022." (Am. Compl. at ¶ 52(b).)

citing *Finkbeiner v. Lutz*, 44 Ohio App.2d 223, 226-27 (1975). For instance, where a landlord establishes a pattern and practice of accepting late rent payments from a tenant, " 'the landlord thereby waives any right to claim forfeiture by reason of the late payments.' " *Colombo Ents., Inc. v. Convenient Food Mart, Inc.*, 2003-Ohio-154, ¶ 20 (8th Dist.), quoting *Lauch v. Monning*, 15 Ohio App.2d 112 (1st Dist. 1968), paragraph one of the syllabus. *See Finkbeiner* at 227 (finding the landlord was "estopped" from relying on the late payments "as grounds for termination of this lease," because the landlord routinely accepted late rent payments from the tenants for nine years). *See also Ultimate Salon & Spa, Inc. v. Legends Constr. Group*, 2019-Ohio-2506, ¶ 41 (11th Dist.) (holding that, because the landlord accepted rent payments from the holdover tenant at the regular contractual rate for one year, the landlord "waived" its right to, and was "estopped from claiming a right to," the increased holdover rent described in the lease); *EAC Properties* at ¶ 26.

{¶ 26} In *Checkers Pub, Inc. v. Sofios*, 2016-Ohio-6963 (6th Dist.), the tenant failed to exercise its option to renew the lease for a new term commencing in 2011, but remained in possession and continued to pay rent. In subsequent litigation, the landlord claimed the tenant forfeited its rights under the lease because the tenant failed to exercise the renewal option. The court in *Checkers Pub* found the landlord was "estopped from asserting a failure to renew the lease in writing because the [landlord] waived their right of forfeiture" by permitting the tenant to "retain[] possession and pay[] rent for two years." *Id*. at ¶ 35. Thus, the landlord's conduct of accepting rent from the tenant for two years estopped the landlord from "asserting that there was breach of the written renewal option of the lease." *Id*. at ¶ 36.[5]

{¶ 27} Additionally, when a landlord accepts future rent from a tenant following service of a three-day notice to vacate the premises, the landlord "waives the notice and may not commence a forcible entry and detainer action." *Colombo Ents., Inc.* at ¶ 15.

---

[5] In *Checkers Pub*, although the court substantively found the facts satisfied the doctrine of waiver by estoppel, the court also noted that the " 'existence of an equitable estoppel is a mixed question of law and fact.' " *Checkers Pub* at ¶ 36, quoting *Finkbeiner* at 229. Judge Mayle of the Sixth District Court of Appeals later observed that the *Checkers Pub* court "blurred the line between these two distinct legal concepts" by referencing equitable estoppel in the court's waiver by estoppel analysis. *Am. Business Invests., L.L.C.*, 2023-Ohio-739, at ¶ 41 (6th Dist.) (Mayle, J., dissenting).

Waiver occurs under this scenario because "accepting rent for continuing the tenancy is inconsistent with a landlord's intent to terminate the tenancy and enforce an order to vacate." *Springboro Commons Retirement Villa, Inc. v. Feltner*, 2021-Ohio-544, ¶ 16 (12th Dist.). However, a tenant remains liable for rent during the pendency of a forcible entry and detainer action, and a landlord "may accept rent paid for liability already incurred without acting inconsistently with the notice to vacate." *Presidential Park Apts. v. Colston*, 1980 Ohio App. LEXIS 4819, *4 (10th Dist. Mar. 20, 1980). For example, in *Sterling Health Care Group, Inc. v. Laughlin*, 1993 Ohio App. LEXIS 2659, *8-9 (6th Dist. May 28, 1993), the landlord served the tenant with a notice to vacate in February 1992, instructing the tenant to vacate the premises by April 1, 1992. The landlord then accepted rent from the tenant for the months of February and March 1992. The landlord's acceptance of the February and March rents "did not constitute a waiver of its right to terminate the lease," because "the February and March rent constituted funds owed to [the landlord] under the terms of the lease" and the tenant paid the rent "prior to April 1." *Id.* at *8-9. *Accord Country Squire Apts. v. Morales*, 1992 Ohio App. LEXIS 4018, *10-11 (6th Dist. Aug. 7, 1992).

{¶ 28} In the present case, the first three tolling agreements extended the "terms and conditions of the . . . Lease[s] related to Ashland's occupancy" for the entirety of the months of January, February, and March 2022, and Ashland agreed to pay SuperAsh "$250,000 per month in rent for each of January, February, and March" 2022. (First, Second, & Third Tolling Agreements at ¶ 1, 4.) The fourth tolling agreement extended "the terms and conditions of the . . . Lease related to Ashland's occupancy" during the "pendency" of the agreement, which "terminate[d] on April 15, 2022," but Ashland agreed to pay SuperAsh "$250,000 in rent for April." (Fourth Tolling Agreement at ¶ 1, 3, 4.)

{¶ 29} Woldenberg explained that, in late March 2022, when the third tolling agreement was about to expire, Ashland asked for another standstill agreement "of a shorter duration. Two weeks." (Tr. Vol. II at 68.) Woldenberg claimed Ashland "wrote" the fourth tolling agreement and "presented it to [SuperAsh] and offered [SuperAsh] $250 thousand of rent for the two weeks [of April]." (Tr. Vol. II at 69.) Whitaker testified that he "[did not] remember" whether Ashland proposed the two-week extension in the fourth tolling agreement, noting he "remember[ed] that it didn't make sense it was a couple weeks,

[he didn't] know why it wouldn't have just been a month." (Whitaker Dep. at 121.) Regardless, the parties understood the fourth tolling agreement only extended Ashland's right to occupy the properties until April 15, 2022. In its complaint, Ashland acknowledged the December 31, 2021 expiration date under the leases "was subsequently extended until April 15, 2022, through the execution of a series of Tolling Agreements." (Compl. at ¶ 5.) In its counterclaim, SuperAsh noted the fourth tolling agreement "terminated on April 15, 2022," and that "Ashland had no right to occupy the Properties" after that date. (Countercl. at ¶ 21-22.) Whitaker affirmed at trial that, while the first three tolling agreements were for an entire month period, the fourth tolling agreement was only "for the first half of April 2022." (Tr. Vol. I at 146-47.)

{¶ 30} The parties executed the fourth tolling agreement on March 29, 2022, and on March 30, 2022, Whitaker sent Feller Ashland's response to SuperAsh's proposed lease terms. (Pls.' Ex. 27.) Feller responded to Whitaker on April 4, 2022, stating that "[a]fter extensive discussions . . . , Superash ha[d] decided to suspend negotiations for a new lease of the portfolio to Ashland." (Pls.' Ex. 29.) Feller noted Ashland's latest proposal demonstrated "there [was] an insurmountable difference" between the parties. (Pls.' Ex. 29.) As such, Feller told Whitaker it would "make sense to begin the process of coordinating the turnover of properties at the end of the current standstill period." (Pls.' Ex. 29.) Whitaker responded to Feller later in the day on April 4, 2022, stating that, while this was "disappointing news," Feller's "thought on next steps is clear. I'll connect internally and get back to you." (Pls.' Ex. 31.)

{¶ 31} On April 12, 2022, Feller sent an email to Whitaker, and copied Woldenberg on the email, stating he "wanted to touch base . . . on a couple of fronts in advance of the upcoming expiration of the occupancy on April 15th of the month." (Pls.' Ex. 31.) Feller also informed Whitaker that SuperAsh "ha[d]n't received the rental amount for the latest standstill period," and asked if Whitaker was "able to let [SuperAsh] know the status of the payment?" (Pls.' Ex. 31.) The fourth tolling agreement required Ashland to pay the rent to SuperAsh "within seven (7) days of the [March 29, 2022] Effective Date" of the agreement. (Fourth Tolling Agreement at ¶ 4.) Whitaker responded to Feller's April 12, 2022 email later that same day, stating he would "touch base with AP and the payment should go out tomorrow, if not sooner. Apologies for the inconvenience." (Pls.' Ex. 31.) Whitaker also

informed Feller Ashland would be "exercis[ing] the purchase option pursuant to the . . . lease." (Pls.' Ex. 31.)

{¶ 32} Woldenberg responded to Whitaker's email on April 13, 2022. Woldenberg initially rejected Ashland's attempt to exercise the purchase option and then stated that, "with Ashland having now made the rent payment, albeit belatedly, it is undisputed that Ashland's occupancy is currently scheduled to expire with the end of the current standstill agreement on Friday, April 15, 2022." (Def.'s Ex. D-19.) Woldenberg asked Whitaker to let him know how he "intend[ed] to turnover the properties to SuperAsh." (Def.'s Ex. D-19.) Woldenberg also informed Whitaker that, if Ashland did not vacate the properties by April 15, 2022, "then Ashland [would] be holding over and SuperAsh reserve[d] all rights it has to remedy Ashland's breach of the parties' agreement." (Def.'s Ex. D-19.)

{¶ 33} The communications between the parties in April 2022 demonstrate that Ashland paid the rent required by the fourth tolling agreement to SuperAsh by at least April 13, 2022. Thus, while Ashland did not pay the rent within 7 days of the effective date of the fourth tolling agreement, Ashland did pay the rent prior to the April 15, 2022 expiration date of the fourth tolling agreement. There is nothing in the record to support the conclusion that Ashland paid, or that SuperAsh accepted, any rent from Ashland after April 15, 2022. In his deposition, Feller noted the "rent payments ha[d] ceased since April [2022]" and that "no income [was] coming in" from the properties after April 2022. (Feller Dep. at 154.) In response to a pre-trial motion filed by Ashland, SuperAsh asserted that Ashland "ha[d] not paid and SuperAsh ha[d] not accepted any rent for the second half of April, May, June, July or any subsequent month of 2022." (July 5, 2022 Memo in Opp. at 3.).

{¶ 34} Accordingly, unlike the situations in *Checkers Pub*, *Finkbeiner*, and *Ultimate Salon & Spa*, SuperAsh did not accept any, let alone several months' worth, of rent from Ashland after the fourth tolling agreement expired. Like the situation in in *Sterling Health Care Group*, SuperAsh simply accepted the rent its tenant contractually agreed to pay, and did not accept any rent from Ashland after Ashland's right to occupy the properties ceased.[6] Furthermore, communications between the parties in April 2022 demonstrate that

---

[6] We note that SuperAsh served Ashland with notices to vacate the premises located in Ohio on June 15, 2022, and that Ashland never paid, and SuperAsh never accepted, any rent from Ashland after that date.

SuperAsh clearly and repeatedly informed Ashland its right to occupy the properties would terminate on April 15, 2022.

{¶ 35} The trial court's conclusion that "Ashland paid, and SuperAsh accepted, significant rent for a two-week time period in April 2022 beyond the termination date of the fourth Tolling Agreement," appears to have been based on the court's construction of the parties' tolling agreements. (Declaratory Jgmt. at ¶ 4.) "[A] de novo standard of review applies to matters of law, including the interpretation and construction of written contracts." *Gatling Ohio*, *L.L.C. v. Allegheny Energy Supply Co.*, *L.L.C.*, 2018-Ohio-3636, ¶ 12 (10th Dist.), citing *Long Beach Assn.*, *Inc. v. Jones*, 1998-Ohio-186, ¶ 13. Because the fourth tolling agreement obligated Ashland to pay SuperAsh $250,000 in rent "for April," but the agreement terminated on April 15, 2022, the terms of the agreement could be viewed as ambiguous regarding whether the rental payment allowed Ashland to occupy the premises for the entire month of April or only until the agreement terminated on April 15, 2022. As noted, however, both Ashland and SuperAsh understood the fourth tolling agreement only extended Ashland's occupancy rights until April 15, 2022. The trial court apparently viewed the $250,000 rental payment as applicable to the entire month of April, and then relied on the April 15th termination date of the agreement, to find that SuperAsh accepted $125,000 in rent from Ashland for the latter two weeks of April 2022.

{¶ 36} However, for waiver by estoppel to apply, the party seeking to claim a right must have engaged in *conduct* inconsistent with the party's intent to claim the right. The trial court's construction of the terms of the fourth tolling agreement does not amount to evidence of any *conduct* by SuperAsh. The record demonstrates SuperAsh accepted the rent due to it under the fourth tolling agreement two days before the fourth tolling agreement expired. We fail to see how SuperAsh's conduct of accepting the rent Ashland agreed to pay in the fourth tolling agreement, during the term of the fourth tolling agreement, could be inconsistent with SuperAsh's right to enforce the April 15, 2022 termination date of that agreement.

{¶ 37} Accordingly, the record does not contain competent or credible evidence to support the trial court's finding that Ashland paid, or that SuperAsh accepted, $125,000 in rent from Ashland after April 15, 2022. Because SuperAsh did not accept any rent from Ashland after the April 15, 2022 expiration of the fourth tolling agreement, and did not

engage in any other conduct that was inconsistent with its right to claim either that the fourth tolling agreement expired on April 15, 2022, or that the leases expired on December 31, 2021, the record does not support the trial court's application of waiver by estoppel to the present case. As such, the trial court abused its discretion by issuing a declaratory judgment finding SuperAsh was estopped from claiming the leases terminated on December 31, 2021.

{¶ 38} Based on the foregoing, we sustain SuperAsh's first assignment of error with respect to the sole issue remanded to us by the Supreme Court of Ohio. Pursuant to our ruling in the present case and the Supreme Court of Ohio's ruling in *Ashland II*, we reverse the trial court's judgment granting Ashland's and Speedway's requests for declaratory relief and Ashland's request for specific performance of the leases. The trial court should address SuperAsh's claims for breach of the leases and FE&D on remand. *See State ex rel. Douglas v. Burlew*, 2005-Ohio-4382, ¶ 11, quoting *State ex rel. Stevenson v. Murray*, 69 Ohio St.2d 112, 113 (1982) (stating that " '[u]pon remand from an appellate court, the lower court is required to proceed from the point at which the error occurred' ").

## IV. Conclusion

{¶ 39} Having sustained SuperAsh's first assignment of error with respect to the sole issue remaining in this remanded case, we reverse the judgment of the Franklin County Court of Common Pleas and remand the case to that court for further proceedings.

*Judgment reversed;*
*case remanded.*

EDELSTEIN and DINGUS, JJ., concur.